Affirmed and Majority and Dissenting Opinions filed August 22, 2002
















Affirmed and
Majority and Dissenting Opinions filed August 22, 2002.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-00-00798-CV

____________

 

THE COURAGE COMPANY, L.L.C., Appellant

 

V.

 

THE CHEMSHARE CORPORATION, Appellee

 

 

 

On Appeal from
the 113th District Court

Harris County, Texas

Trial Court
Cause No. 00-15656

 

 

 

M A J O R I
T Y   O P I N I O N

            This is an appeal from a Harris County district
court’s judgment denying recognition of a foreign money judgment that appellant,
The Courage Company, L.L.C. (“Courage”) obtained against appellee,
The ChemShare Corporation (“ChemShare”)
in the District Court of Tokyo, Japan. 
Courage challenges the district court’s determination that the Japanese
judgment was not entitled to recognition or enforcement in Texas for the
following reasons:  (1) the Japanese
system did not provide procedures compatible with due process because it did
not provide for jury trials; (2) the Tokyo District Court did not have personal
jurisdiction over ChemShare; (3) Courage’s cause of
action was repugnant to the public policy of Texas; 

 class=Section2>

(4)
the parties agreed to submit to arbitration; (5) Japan was a seriously
inconvenient forum for ChemShare; and (6) Courage
failed to comply with the procedural requirements of the Texas Uniform Foreign
Country Money-Judgment Recognition Act ( “UFCMJRA”) by failing to provide a
properly authenticated translation of the judgment.  Because the parties had agreed to submit to
arbitration, we affirm on that ground and do not reach Courage’s other issues.

PROCEDURAL
BACKGROUND

            In August of 1998, Courage, a
Virginia limited liability company, sued ChemShare
and another company, Winsim, Inc., both Texas
corporations, in the District Court of Tokyo, Japan.  Courage sought restitution of over $1.2
million allegedly owed by ChemShare under an
agreement known as the DesignMASTER Development
Agreement (Development Agreement). 
Courage brought the suit shortly after obtaining its interest in the
Development Agreement by assignment from Information Services International-Dentsu, Limited (“ISI-Dentsu”), a
Japanese company that originally entered into the agreement with ChemShare.  ChemShare filed a reply in the Tokyo District Court,
asserting a jurisdictional defense, contesting Courage’s standing to bring the
suit, and raising forum non conveniens
objections.  The record discloses no
other appearance by ChemShare prior to the
pronouncement of the Tokyo District Court’s judgment on December 3, 1999.  

            In its judgment, the Tokyo District
Court rejected ChemShare’s jurisdictional challenge
and ordered ChemShare to pay Courage $1,080,977.49,
together with interest on a down payment of $730,054.02, and a portion of the
court costs.  The court dismissed
Courage’s claims against Winsim, Inc. for lack of
jurisdiction.  

            Courage subsequently filed a Notice
of Filing of Foreign Judgment and supporting affidavit in the Harris County
District Court to obtain recognition of the judgment.  In response, ChemShare
filed a Motion for Nonrecognition of Foreign Country
Money Judgment, alleging two mandatory and three discretionary grounds for nonrecogintion under the UFCMJRA, and further alleging that
Courage failed to satisfy the procedural requirements of the UFCMJRA.  In an order dated June 5, 2000, the trial court granted ChemShare’s motion, holding that the judgment rendered by
the Tokyo District Court on December
 3, 1999 was refused recognition and was not enforceable in Texas.

            Courage moved for new trial or for
reconsideration of the trial court’s order refusing recognition, which the
trial court denied.  At Courage’s
request, the trial court made findings of fact and conclusions of law.  Because the court adopted the proposed
findings of fact and conclusions of law submitted by ChemShare,
Courage objected to a number of them. The trial court overruled the objections,
but amended the findings of fact and conclusions of law previously entered to
correct several typographical errors and to correct the identification of a
conclusion of law as a finding of fact. 
This appeal followed.

FACTUAL
BACKGROUND

            The facts relevant to the
disposition of this appeal are as follows. 
ChemShare was a Texas
corporation that designed and developed simulation software programs used in
chemical plants and refineries.  ISI-Dentsu was a Japanese company engaged in the computer-aided
design business.  In 1986, ChemShare and ISI-Dentsu entered
into a distributor agreement, in which the parties agreed that ISI-Dentsu would distribute ChemShare’s
simulation software products to ISI-Dentsu’s
customers in Japan, and ChemShare would receive royalty payments on ISI-Dentsu’s sales of ChemShare’s
products.

            Following the expiration of the
initial distributor agreement in 1991,[1] ChemShare and ISI-Dentsu
continued to conduct business as they had done in the past while they
negotiated a new distributor agreement.  ChemShare had created a software program known as DesignMASTER that provided an integration system for
process engineering tasks, and ISI-Dentsu proposed
that ChemShare modify and enhance the DesignMASTER program based on specifications provided by
ISI-Dentsu.  In
November 1991, ChemShare and ISI-Dentsu
entered into the DesignMASTER Development Agreement
(the “Development Agreement”), in which ISI-Dentsu
agreed to cover a portion of the costs associated with the development and
enhancement of the DesignMASTER products by prepaying
royalties that would be due ChemShare under the new
distribution agreement for the anticipated future sales of ChemShare’s
products.  The Development Agreement
provided as follows:

All enhancements and
developments made hereunder by ChemShare shall be
deemed to be the enhancement of DesignMASTER under
the Distributor Agreement, thus [ISI-Dentsu] shall be
granted by ChemShare the same distribution right in Japan of the
enhancements and developments of DesignMASTER as
currently exist under the proposed Distributor Agreement.

The
Development Agreement also provided that ChemShare
was to complete the development of DesignMASTER in
accordance with a development schedule that contemplated completion in June of
1992.  ISI-Dentsu
agreed to pay ChemShare in accordance with an
attached disbursement schedule that contemplated payments from November 1991
through October 1992.  The Development
Agreement recited that the payments were “a prepayment of the portion of
royalties to be remitted by [ISI-Dentsu] to ChemShare under the Distributor Agreement.”

            The Development Agreement contained
a choice of law provision specifying that the Development Agreement “shall be
governed by and construed in accordance with the laws of Japan.”  It also contained a forum selection clause
providing as follows:

ChemShare hereby
irrevocably and unconditionally submits to the non-exclusive jurisdiction of
the Tokyo District Court, in relation to any claim, dispute or difference which
may arise under this Agreement, but without prejudice to the rights of [ISI-Dentsu] to commence any legal action or proceeding in the
courts of any other competent jurisdiction.

            Following the execution of the Development
Agreement, ChemShare and ISI-Dentsu
completed negotiations of the terms of a new distributor agreement.  The new agreement, entitled “Distribution
Agreement,” was dated June 11,
 1992, and had a retroactive effective date of April 1, 1991.

            In contrast to the Development
Agreement, the Distribution Agreement provided for arbitration of “any dispute
or difference arising out of or relating to this Agreement.”[2]  Arbitration was to be held according to the
Rules of Conciliation and Arbitration of the International Chamber of
Commerce.  In the event that ChemShare initiated a dispute, the arbitration was to be
held in Tokyo, Japan.  In the event that ISI-Dentsu
initiated a dispute, the arbitration was to be to be held in Houston, Texas.  In either case, the arbitration was to be
held in the English language, and the construction of the agreement was to be
governed by Texas law.  The Distribution Agreement also provided that
its terms and conditions superseded those of all previous agreements between ChemShare and ISI-Dentsu with
respect to the “Products.”[3]  Further, the agreement was not assignable
without the prior written consent of ChemShare.

            In 1994, ISI-Dentsu
decided to withdraw from the computer-aided engineering business in the
chemical industry and notified ChemShare of its
decision to start phasing out of ChemShare’s
business.  ISI-Dentsu
demanded restitution of the prepayments that it had made to ChemShare
under the Development Agreement that were allegedly outstanding at the
time.  ChemShare
and ISI-Dentsu decided to terminate their business
relationship, and in March 1995, executed a Termination Agreement.  Under the Termination Agreement, the parties
agreed that the termination of the Distribution Agreement “shall not otherwise
affect any rights or obligations of the parties accrued or vested prior to
termination.”  

            On June 1, 1998, ISI-Dentsu
transferred and assigned to Courage “all of its right, title and interest in
and to the Agreement, together with any other rights and claims [ISI-Dentsu] may otherwise have against ChemShare
or parties related to ChemShare.”  The “Agreement” was defined as the DesignMASTER Development Agreement “together with all other
agreements with ChemShare related or collateral
thereto.”  Shortly thereafter, Courage, a
Virginia limited
liability company with its principal place of business in the United
 States, filed its lawsuit in the District
Court of Tokyo, Japan, seeking to recover more than $1.2 million in prepayments
made by ISI-Dentsu to ChemShare
under the Development Agreement.  At the
time of the lawsuit, ChemShare’s principal place of
business was located in Sugar Land, Fort Bend
 County, Texas.  

            In response to Courage’s lawsuit, ChemShare, on behalf of itself and its co-defendant, Winsim, Inc., first requested a continuance to enable it to
obtain legal counsel in Japan, noting the “special circumstances” that both the
plaintiff and the defendants were United States companies, the difficulty in
locating Japanese counsel, and the inconvenience to the defendants.  ChemShare then
appeared for the limited purpose of asserting a jurisdictional defense, to
question Courage’s standing to bring the lawsuit, and to assert an objection to
the Japanese forum based on forum non conveniens
grounds.  ChemShare
apparently was unable to obtain Japanese legal counsel to represent it, and
made no other appearance.[4] 

            The Tokyo District Court’s judgment
reflects that oral argument was heard on Courage’s claims, and the judgment was
rendered by a three-judge panel.  In a
detailed opinion, the Tokyo District Court rejected ChemShare’s
jurisdictional argument, primarily because of the provision in the Development
Agreement in which the parties agreed to submit disputes to the nonexclusive
jurisdiction of the Tokyo District Court. 
There is no evidence that the Tokyo District Court was provided with a
copy of the Distribution Agreement, which provided that disputes arising from
or relating to the Agreement were to be conclusively settled by arbitration.  Rejecting ChemShare’s
jurisdictional arguments, the Tokyo District Court found in favor of Courage on
its claim for restitution and entered its judgment accordingly.  Defendant Winsim,
Inc., however, was dismissed from the lawsuit for lack of jurisdiction.

            Armed with its judgment from the
Tokyo District Court, Courage sought recognition of the judgment by filing it
in the district court of Harris County, Texas. 
ChemShare objected to the filing and moved for
nonrecognition of the judgment, asserting two
mandatory and three discretionary grounds for refusing recognition under the
UFCMJRA, and additionally asserting that the filing was procedurally
defective.  After receiving Courage’s
response to the motion, the district court granted ChemShare’s
motion for nonrecognition, and entered an order
reflecting that recognition was refused and the judgment was not enforceable in
Texas. 

DISCUSSION

            On appeal, Courage asserts that the
district court erred in granting ChemShare’s motion
for nonrecognition for the following reasons:  (1) the absence of a jury trial right does
not prevent recognition and enforcement of a foreign country judgment; (2) ChemShare consented to the jurisdiction of the Tokyo
District Court in the Development Agreement and appeared before the Court on
the merits; (3) Courage had a valid cause of action which it received by
assignment from ISI-Dentsu; (4) there was no binding
arbitration agreement pertaining to the disputes resolved by the Japanese
judgment; (5) Japan was not a seriously inconvenient forum for ChemShare because it consented to jurisdiction; and (6)
Courage complied with all procedural requirements because the English
translation of the original Japanese judgment, together with the judgment,
constituted an official document of the Tokyo District Court that requires no
further authentication.  

            In its response brief, ChemShare conceded that Courage’s sixth issue had been
rendered moot by the district court’s finding that Courage had filed a properly
authenticated copy of the Japanese judgment, along with an English translation
of the judgment and the apostille, and its order
directing the court clerk to supplement the clerk’s record on appeal with the
documents.  We will therefore proceed to
the remaining issues.

            1.         The UFCMJRA

            The UFCMJRA governs the recognition
of foreign country money judgments. Tex.
Civ. Prac. & Rem. Code Ann. § 36.001-.008 (Vernon
1997).  When recognition is not contested
or a contest is overruled, a foreign country judgment is conclusive between the
parties to the extent that it grants recovery or denial of a sum of money.  Reading
& Bates Constr. Co. v. Baker Energy Res. Corp.,
976 S.W.2d 702, 706 (Tex. App.—Houston [1st Dist.] 1998, pet. denied).  It is enforceable in the same manner as a
judgment of a sister state entitled to full faith and credit.  Id.  

            Section 36.005 sets forth three
mandatory and seven discretionary grounds for nonrecognition
of a foreign country judgment; these are the only defenses available to a
judgment debtor.  Dart v. Balaam, 953 S.W.2d 478, 480 (Tex. App.—Fort Worth 1997, no
writ); Tex. Civ.
Prac. & Rem. Code Ann.
§ 36.005.  In the district court, ChemShare raised the following two mandatory grounds in
support of its motion for nonrecognition:

(a) A foreign country judgment is not conclusive if:

            (1)       the
judgment was rendered under a system that does not provide impartial tribunals
or procedures compatible with the requirements of due process of law; 

            (2)       the
foreign country court did not have personal jurisdiction over the defendant.

Id. §
36.005(a)(1), (2).




 








            ChemShare
also raised three discretionary grounds:

(b)       A foreign country judgment need not be
recognized if:

            (3)       the cause
of action on which the judgment is based is repugnant to the public policy of
this state; 



            (5)       the
proceeding in the foreign country court was contrary to an agreement between
the parties under which the dispute in question was to be settled otherwise
than by proceedings in that court; 

            (6)       in
the case of jurisdiction based only on personal service, the foreign country
court was a seriously inconvenient forum for the trial of the action;

Id. § 36.005(b)(3), (5), and (6).

            The party seeking to avoid
recognition has the burden of proving a ground for nonrecognition.  Dart,
953 S.W.2d at 480; Southwest Livestock
and Trucking Co., Inc. v. Ramon, 169 F.3d 317, 320 (5th Cir. 1999).  Unless the judgment debtor satisfies his
burden of proof by establishing one or more of the specific grounds for nonrecognition, the court is required to recognize the
foreign country judgment.  Dart, 953 S.W.2d at 480.  A judgment debtor is precluded from
collaterally attacking a foreign judgment when an issue was litigated before a
foreign court or the party was given the opportunity to litigate the issue
before that court.  Id.  Grounds for nonrecognition
may be waived if a party had the right to assert that ground as an objection or
defense in the foreign country court but failed to do so.  Id.

            We review a trial court’s ruling on
recognition of a foreign country judgment de novo. Reading & Bates Constr. Co., 976
S.W.2d at 708.  Notwithstanding the
reasons stated by the trial court in its findings and conclusions, we will
uphold the district court’s order on any ground which is supported by the
record.  See In re Stevens, 971 S.W.2d 757, 760 (Tex. App.Beaumont
1998, orig. proceeding). 

            On appeal, Courage has challenged
each of the grounds urged by ChemShare in the
district court, but because we find that the judgment may be affirmed  on the ground that the parties had agreed to
arbitration, we do not address the remaining issues.  

            2.         The Parties Agreed to Arbitration

            In Courage’s fourth issue, it
attacks the district court’s determination that the Japanese judgment was not
entitled to recognition because the proceeding in the Japanese court was
contrary to an agreement between ChemShare and ISI-Dentsu under which disputes were to be resolved by
arbitration.  See Tex. Civ.
Prac. & Rem. Code Ann.
§ 36.005(b)(5).  Courage argues that,
under the Development Agreement, ChemShare
irrevocably agreed to submit to the jurisdiction of the Tokyo District
Court.  Courage maintains that the
Distribution Agreement did not alter this agreement, because the Distribution
Agreement did not supersede the Development Agreement in time or subject
matter, and because the Distribution Agreement was terminated by the parties
before ISI-Dentsu assigned its rights to
Courage.  Additionally, Courage argues, ChemShare waived any right to arbitration because it did
not raise it in the Tokyo District Court.[5]

                        a.         The Development and Distribution Agreements must be construed together.

            We first turn to the substance of
Courage’s argument that the trial court erred in granting the motion for nonrecognition because there was no arbitration agreement
between the parties with respect to the subject matter of the Japanese
litigation.  Courage relies upon the
language in the Development Agreement providing that ChemShare
agreed to submit to the non-exclusive jurisdiction of the Tokyo District Court
“in relation to any claim, dispute or difference which may arise under this
Agreement.”  In order to accept Courage’s
premise, we are required to view the Development Agreement in a vacuum,
unaffected by the subsequent Distribution Agreement.  A review of the documents and the applicable
law, however, compels the opposite conclusion.

            The parties entered into the
Development Agreement in November 1991, while negotiations were continuing for
a new distributor agreement.  Under the
Development Agreement, ChemShare agreed to enhance
and develop its DesignMASTER software products in
accordance with ISI-Dentsu’s specifications.  In exchange, ISI-Dentsu
agreed to make advance payments on royalties that would be due ChemShare under the new distributor agreement.  The Development Agreement provided that it
was governed by and construed in accordance with the laws of Japan;
additionally, ChemShare agreed to submit to the
non-exclusive jurisdiction of the Tokyo District Court “in relation to any
claim, dispute or difference which may arise under this Agreement.”  

            Seven months later, in June 1992, ChemShare and ISI-Dentsu entered
into the contemplated Distribution Agreement. 
The Distribution Agreement set out the terms and conditions governing
the relationship between Chemshare as supplier and
ISI-Dentsu as exclusive distributor of ChemShare’s software products, including DesignMASTER. 

            In contrast to the choice of law and
forum selection clauses in the Development Agreement, the Distribution
Agreement provided that it would be governed by the laws of Texas “except
where specific provisions which conflict with these are made under the terms of
this Agreement.”  The Distribution
Agreement also provided that “any dispute or difference arising out of or
relating to this Agreement shall, unless settled by mutual consultation in good
faith, be conclusively settled by arbitration . . . .”  The arbitration provision specified that in
the event ChemShare initiates a dispute, the location
of the arbitration shall be Tokyo, Japan, and if
ISI-Dentsu initiates arbitration, the location shall
be in Houston.  In either event, the arbitration shall be
conducted in the English language and “the construction of the Agreement shall
be governed by the laws of the State of Texas.”

            We now turn to Courage’s substantive
arguments.  Courage contends that the
trial court erred in finding that the parties agreed to resolve their disputes
in arbitration, because the Distribution Agreement did not supersede the
Development Agreement in time or by subject matter, and because the
Distribution Agreement was terminated by the parties before the assignment to
Courage and the subsequent court proceeding. 
In response, ChemShare argues that the
Development Agreement and the Distribution Agreement must be construed together
to give full effect to the parties’ intentions. 
ChemShare does not argue that the Distribution
Agreement revoked the Development Agreement in its entirety; rather, it
contends that the Distribution Agreement modified, changed, or rescinded
certain terms and provisions of the Development Agreement.  With regard to the conflicting choice of
forum provisions, ChemShare contends that the
arbitration provision of the later-executed Distribution Agreement
controls.  

            It is well established that
instruments pertaining to the same transaction may be read together to
ascertain the parties’ intent, even if the parties executed the instruments at
different times and the instruments do not expressly refer to each other.  Fort
Worth Indep. Sch. Dist. v.
City of Fort Worth, 22 S.W.3d 831, 840 (Tex. 2000); World Help v. Leisure Lifestyles, Inc.,
977 S.W.2d 662, 675–76 (Tex. App.—Fort Worth 1998, pet. denied).  A court may determine, as a matter of law,
that multiple documents comprise a written contract, and in appropriate
instances, may construe all the documents as if they were part of a single,
unified instrument.  Fort Worth Indep. Sch.
Dist., 22 S.W.3d at 840. 

            It has been stated that a difficult
question of interpretation may arise when a second contract deals with the same
subject matter as the first contract made by the same parties, but does not
specify whether or to what extent it is intended to operate in discharge or
substitution.  Cooper v. Supercinski, 700 S.W.2d 239,
243 (Tex. App.—Waco 1985, writ ref’d n.r.e); Crown Western
Investments, Inc. v. Mercantile Nat’l Bank at Dallas, 504 S.W.2d 785, 789
(Tex. Civ. App.—Tyler 1974, no writ).  In such a case, the two contracts must be
interpreted together, and to the extent that they are inconsistent, the later
one prevails.  Cooper, 700 S.W.2d at 243; Crown
Western Investments, 504 S.W.2d at 789. 
The remainder of the first contract not in conflict with the second may
be enforced.  Cooper, 700 S.W.2d at 243–44; Crown
Western Investments, 504 S.W.2d at 789. 

            Here, the same parties, IDI-Dentsu and ChemShare, entered
into both the Development Agreement and the Distribution Agreement.  In the Distribution Agreement, they agreed to
forum selection and choice of law clauses that are plainly inconsistent with
those of the Development Agreement. 
Therefore, the question becomes whether the two agreements involve the
same subject matter such that they should be construed together, with the terms
of the later-executed Distribution Agreement controlling over the conflicting
terms of the Development Agreement, or whether the Development Agreement is
more properly considered a separate agreement that is not affected by the
subsequent Distributor Agreement.

            The Development Agreement clearly
demonstrates that ChemShare and ISI-Dentsu anticipated entering into a new Distribution
Agreement that would govern the distribution of the enhanced DesignMASTER software. 
References to the proposed Distribution Agreement appear throughout the
Development Agreement.  Among other
things, ChemShare and ISI-Dentsu
agreed to the following:

$                      “All
enhancements and developments made [under the Development Agreement] by ChemShare shall be deemed to be the enhancement of DesignMASTER under the Distributor Agreement, thus [ISI-Dentsu] shall be granted by ChemShare
the same distribution right in Japan of the enhancements and developments of DesignMASTER as currently exist under the proposed
Distributor Agreement . . . .”

$                      “[ISI-Dentsu] agrees to pay to ChemShare
. . . as a prepayment of the portion of royalties to be remitted by [ISI-Dentsu] to ChemShare under the
Distributor Agreement.”

$                      “The
said prepayments shall be credited with royalties due to ChemShare
for DesignMASTER under the Distributor Agreement.”

$                      “Should
ChemShare’s enhancements and developments [be behind
schedule], the said prepayments shall be credited with royalties due to ChemShare for all the ChemShare
products licensed under the Distributor Agreement after [ISI-Dentsu] has given ChemShare a
remedy period to be agreed upon by both parties . . . .”

$                      “In
case of the termination of the disbursement of the prepayment as specified
above [by ISI-Dentsu], all the prepayment made by
[ISI-Dentsu] hereunder shall be credited with
royalties due to ChemShare for all the ChemShare Products licensed under the Distributor Agreement
after [ISI-Dentsu] has given ChemShare
a remedy period to be agreed upon by both parties . . . .”

$                      “Should outstanding
balance of prepayment made by [ISI-Dentsu] exists
[sic] at the end of October, 1993, the said prepayment shall be credited with
royalties due to ChemShare for all the ChemShare Products licensed under the Distributor
Agreement.”

            A comparison of the Development
Agreement with the Distribution Agreement further demonstrates their
interrelated nature.  Under the
Distribution Agreement, ISI-Dentsu was appointed the
exclusive sales and service distributor for ChemShare’s
products in Japan.  In return for its efforts, ISI-Dentsu was entitled to a percentage of the net royalty
revenue received from the sales of the products.  Under the Development Agreement, ISI-Dentsu agreed to pay a portion of the costs associated with
the enhancement and development of the DesignMASTER
software, and such payments were to be treated as a portion of the royalties
due under the Distributor Agreement.  

            Given the foregoing, we find that
the two agreements pertain to the same subject matterthe
distribution of ChemShare’s products in Japan.  Thus, we review them together to determine
the parties’ intent, and if the forum selection provisions conflict, then the provision
of the later-executed Distributor Agreement will control.  

            Under the Development Agreement,
Japanese law applied, and ChemShare irrevocably and
unconditionally submitted to the non-exclusive jurisdiction of the Tokyo
District Court in relation to any claim, dispute or difference arising under the Development Agreement, without prejudice to ISI-Dentsu’s right to commence any legal action or proceeding
in the courts of any other jurisdiction. 
However, under the Distribution Agreement, the parties agreed that, with
certain exceptions, any dispute or difference arising out of or relating to the Distribution Agreement shall be
conclusively settled by arbitration as specified.  Thus, disputes arising under the Development
Agreement are governed by the terms of that agreement, and disputes arising
under or relating to the Distribution Agreement are governed by the terms of
that agreement.

            At oral argument, Courage conceded
that “in a broad sense” the two agreements applied to the same subject
matter.  Nevertheless, Courage
strenuously argued that the purpose of the two agreements differed, and that in
the present case only the Development Agreement was breached, not the
Distribution Agreement.  Specifically,
Courage argued that the Development Agreement was directed to developing the DesignMASTER product, while the Distribution Agreement was
directed to the sales of the product. 
Because the DesignMASTER products that were
developed failed and were never sold, Courage contends there were no sales
under the Distribution Agreement and ChemShare never
earned the $1.2 million Courage sought to recover.  

            However, we do not agree with
Courage’s conclusion that the two agreements are separate and independent.  The language of the Development Agreement
makes clear that the proposed enhancements were deemed to be enhancements under
the Distribution Agreement, and the royalties to be prepaid by ISI-Dentsu were royalties due ChemShare
under the Distribution Agreement.  There
is no rational basis for viewing the two agreements in isolation, after the
fact, when they are so inextricably intertwined.  Moreover, Courage’s own pleading in the Tokyo
District Court supports our conclusion. 
In that pleading, Courage expressly referred to the negotiation and
execution of the Distribution Agreement and alleged that, under the Development
Agreement, ISI-Dentsu “would pay an aggregate amount
of US $1,200,000 required for the development of such new functions as a
prepayment of a portion of royalties under
the Distribution Agreement” (emphasis added).  Thus, by Courage’s own admission, the
resolution of its claim required reference to, and reliance upon, the
Distribution Agreement.

            Additionally, we reject Courage’s
contention that the Development Agreement was not superseded by the
Distribution Agreement in time because the parties specifically made the
Distribution Agreement effective from April 1, 1991.  Courage’s
argument is counterintuitive, and if anything, the fact that the parties
intended the Distribution Agreement to be effective from that date bolsters the
conclusion that the parties intended for the Distribution Agreement to
supersede and to control to the extent that any provisions of the two
agreements were inconsistent.  Given that
(1) the Distribution Agreement was contemplated in the Development Agreement
and was made effective prior to the Development Agreement, and (2) the breach
alleged by Courage was factually intertwined with the Distribution Agreement, ChemShare’s alleged breach of the Development Agreement was
a breach of the commercial relationship of the parties that “related to” the
Distribution Agreement and triggered its arbitration provision.  In other words, the dispute was not so much
about an alleged breach of the Development Agreement, but rather an alleged
breach of the global agreement for the development and distribution of ChemShare’s products. 
This conclusion is further supported by the following merger clause
contained in the Distribution Agreement: 
“[t]he terms and conditions of this Agreement supersede those of all
previous Agreements between ChemShare and the
Distributor with respect to the Products.” 
By Courage’s own admission, it sought a return of prepayments for
enhancements of the DesignMASTER product that it
contends failed, enhancements thatunder the
terms of the Development Agreementwere deemed
enhancements under the Distribution Agreement.

            Finally, Courage argues that the
Distribution Agreement could not supersede the Development Agreement because
the Distribution Agreement was terminated. 
However, the Termination Agreement specifically provided that the
termination of the Distribution Agreement “shall not otherwise affect any
rights or obligations of the parties accrued or vested prior to termination.”  The purpose of the Termination Agreement was
to document the termination of the business relationship between ChemShare and ISI-Dentsu.  As Courage alleged in its pleading in the Toyko District Court, and as demonstrated by the record, ChemShare and ISI-Dentsu
discussed the termination of the Distribution Agreement and restitution of the
prepayments allegedly owed to ISI-Dentsu by ChemShare prior to entering into the Termination
Agreement.  Any claims or rights that
ISI-Dentsu had against ChemShare
(and assigned to Courage) accrued prior to the execution of the Termination
Agreement.  Therefore, by its own terms,
the execution of the Termination Agreement did not extinguish those claims.[6]

            Therefore, we hold the district
court did not err in finding that the Japanese judgment was not entitled to
recognition and enforcement because the parties had agreed to arbitrate their
disputes, and nonrecognition based on section
36.005(b)(5) was proper.

                        b.         ChemShare did not waive its right to assert arbitration.

            Having determined that the arbitration
provision of the Distribution Agreement applies to the Development Agreement,
we now turn to Courage’s argument that ChemShare has
waived the right to raise arbitration by failing to raise it in the Japanese
proceeding.  ChemShare
responds to this argument by asserting that it appeared pro se in the Japanese
proceeding for the limited purpose of contesting jurisdiction, challenging
Courage’s standing, and asserting forum non conveniens
grounds.  ChemShare
contends that it did not attempt to defend on the merits because that may have
subjected it to the jurisdiction of the Japanese court.  Further, ChemShare
argues, in Texas, the
assertion of an arbitration provision is an affirmative defense that may
subject a party to the jurisdiction of the court.  We agree that ChemShare
did not waive the right to arbitrate by failing to raise it in the Japanese
forum.

            To accept Courage’s waiver argument,
we must first agree that ChemShare actually litigated
or was given the opportunity to litigate the issue in the Japanese proceeding.  See
Dart, 953 S.W.2d at 480.  Courage
contends that, in addition to asserting its jurisdictional defense, ChemShare addressed the substantive merits of the case by
filing its motion for continuance and a detailed tobensho, or reply, contesting
Courage’s claims on both procedural and substantive grounds.  In support of this assertion, Courage relies
upon the affidavit of Satoshi Ogishi, in which Ogishi, a licensed Japanese lawyer, stated that ChemShare contested Courage’s claims on both jurisdictional
and substantive grounds, and that the tobensho was in Japanese, in proper Japanese legal form, and
contained citations to Japanese law.  Ogishi also opined that the tobensho did not contain any
“jurisdictional defense” that the dispute was subject to mandatory arbitration,
and that such a defense “was fully available for Defendants to assert” in the
Japanese proceeding.  Courage cites no
Japanese authority in support of its waiver argument.

            We have previously determined that
the Distribution Agreement applies to the dispute between Courage and ChemShare over the royalty prepayments.  Under the Distribution Agreement’s
arbitration provision, “[i]n the event that [ISI-Dentsu] initiates a dispute, the location of the
arbitration shall be Houston in the
English language.”  Moreover, the
parties’ agreement was governed by Texas law.  Nevertheless, Courage, as assignee of ISI-Dentsu, initiated a lawsuit in Tokyo rather
than arbitration in Houston in
contravention of the parties’ agreement. 
We must therefore consider whether ChemShare’s
failure to raise arbitration in response to that lawsuit waived its right to
assert the arbitration agreement as a ground for nonrecognition
of the Tokyo District Court’s judgment. 

            Under Texas law, the
right to arbitrate, like any other contractual right, may be waived.  Transwestern Pipeline
Co. v. Horizon Oil & Gas Co., 809 S.W.2d 589, 592 (Tex. App.—Dallas
1991, writ dism’d w.o.j.); Home Club, Inc. v. Barlow, 818 S.W.2d
192, 193 (Tex. App.—San Antonio 1991, no writ). 
Whether a party has waived its right to compel arbitration is a question
of law subject to de novo review.  In re Bruce Terminix
Co., 988 S.W.2d 702, 704 (Tex. 1998); Transwestern Pipeline, 809 S.W.2d at 592.  A presumption exists against waiver of
arbitration.  Id.  Waiver will be found when the party seeking
arbitration substantially invokes the judicial process to the detriment or
prejudice of the other party.  Home Club, 818 S.W.2d at 193 (citing USX Corp. v. West, 759 S.W.2d 764, 767
(Tex. App.—Houston [1st Dist.] 1988, orig. proceeding [leave denied])).  Mere delay in making an arbitration demand
does not constitute waiver; it is only when this delay results in actual
prejudice that it may amount to a waiver. 
Id.  In addition, the waiver of an arbitration
right must be intentional.  EZ Pawn Corp. v. Mancias,
934 S.W.2d 87, 89 (Tex. 1996).

            Thus, for example, in Home Club, the court found that the
parties seeking arbitration did not waive the right to assert arbitration when
they filed special appearances and then, when the special appearances were
overruled or conceded, filed answers, responded to interrogatories, and did not
file a motion to stay the case pending arbitration for several months.  Id. at
193.  In reaching its decision, the Home Club court noted that the parties
had not taken advantage of the judicial process, but had merely taken defensive
actions by contesting jurisdiction and seeking to set aside default
judgments.  Id. Similarly,
in Transwestern,
the court rejected the argument that Transwestern
Pipeline had waived the right to arbitration when it failed to invoke the
arbitration clause in its answer or prior to its filing, or before the setting
of an initial trial date.  Transwestern, 809
S.W.2d at 593.  Further, the trial court
held that the filing of a general denial to prevent entry of a default judgment
in and of itself was insufficient to deny Transwestern
the right to later seek to compel arbitration.  Id.

            In its reply to Courage’s lawsuit, ChemShare presented its jurisdictional arguments, and moved
for dismissal and costs, under a section entitled “Claims Prior to the
Merits.”  Under the second section,
“Claims Based on the Merits,” ChemShare again moved
for dismissal and costs, and presented the following argument:

Pending more detailed
arguments regarding the substantive causes of action in this case that
Defendants will make, if necessary, after the court hands down its ruling
regarding the issues prior to the merits, Defendants categorically contest all
claims made by plaintiff, including that Defendants have any obligation to
return the deposit moneys in question or that Winsim
has any obligation to pay any damages in this case.  

It
is evident that ChemShare was making its claims on
the merits subject to the court’s ruling
on its jurisdictional objections. 
Further, the Tokyo District Court’s judgment does not reflect that ChemShare made any arguments on the merits, and it is
undisputed that ChemShare did not appear and defend
after it entered its reply.  This case is
thus distinguishable from Dart, in
which the court found that the appellant had waived his right to assert an
agreement to arbitrate as a ground for non-recognition of an Australian
judgment.  See Dart, 953 S.W.2d at 482. 
In Dart, the appellant had
made an unconditional appearance and filed a counterclaim seeking affirmative
relief in the Australian court.  Id.  In the present case, ChemShare
did not waive its jurisdictional arguments or seek affirmative relief in the
Tokyo District Court.  Moreover, there is
no finding by the Tokyo District Court that ChemShare
waived its jurisdictional arguments, nor did Courage’s legal expert, Satoshi Ogishi, opine in his affidavit that ChemShare
waived its jurisdictional objections. 
Indeed, ChemShare’s filings in the Tokyo
District Court were on behalf of itself and Winsim, Inc.,and Winsim was ultimately
dismissed for lack of jurisdiction.  It
is implicit in the Tokyo District Court’s dismissal of Winsim
that its (and ChemShare’s) jurisdictional objections
were not waived.[7]

            We hold that, given these
circumstances, ChemShare’s reply filed in the Tokyo
District Court did not waive its right to assert arbitration under Texas law.  ChemShare’s
jurisdictional argument was made prior to any response on the merits.  Further, the substantive reply was made
expressly subject to the jurisdictional defense and the Tokyo District Court’s
ruling on its defenses, and at no time did ChemShare
take advantage of the Japanese judicial process.  Accordingly, we do not find that ChemShare substantially invoked the judicial process to the
detriment or prejudice of Courage such that it should be barred from asserting
its right to arbitration; nor do we find that Courage was actually prejudiced
by any delay on the part of ChemShare.  Indeed, Courage has neither argued nor
demonstrated that it was prejudiced by any delay here.  Therefore, we hold that ChemShare
did not waive its defense of arbitration because it did not actually litigate
the issue before the Tokyo District Court or forego the opportunity to do so.

HOLDING

            We hold the trial court did not err
in determining that the Japanese judgment was not entitled to recognition under
Texas Civil Practice and Remedies Code section 36.005(b)(5) on the grounds that
the parties had agreed to arbitration of their disputes.  Accordingly, we affirm the judgment of the
trial court.

 

 

 

                                                                                    

                                                                        /s/        John S. Anderson

                                                                                    Justice

 

Judgment
rendered and Majority and Dissenting Opinions filed August 22, 2002.

Panel
consists of Justices Anderson, Hudson, and Edelman.  (Edelman, J. dissenting.)

Publish — Tex. R. App. P. 47.3(b).








Affirmed and Majority and Dissenting Opinions filed August 22,
 2002.

 

In The

Fourteenth Court of
Appeals

_______________

 

NO. 14-00-00798-CV

_______________

 

THE COURAGE COMPANY, L.L.C., Appellant

V.

THE CHEMSHARE CORPORATION, Appellee

______________________________________________________________

 

On Appeal from
the 113th District Court

Harris County, Texas

Trial Court
Cause No. 00-15656

______________________________________________________________

 

D I S S E N T I N G   O P I
N I O N

 

            The majority opinion essentially
holds that a foreign judgment can be denied recognition on the ground that the
foreign proceeding was contrary to an agreement to settle the dispute other
than by proceedings in that court[8] even
though the foreign court was never apprised of any such agreement.  I believe this conclusion is contrary to the
rule that a judgment debtor may not rely on a ground for nonrecognition
of a foreign judgment that the party had a right, but failed, to assert in the
foreign proceeding.[9]

            In this case, whether Chemshare’s failure to urge its right to arbitration in the
Japanese proceeding would constitute a 
“waiver” of that right under the Texas case law
cited in the majority opinion is academic. 
The fact remains that whatever opportunity Chemshare
had to assert its arbitration claim in the Japanese court is now gone, and the
circumstances set forth in the majority opinion show no other reason for Chemshare’s loss of its arbitration claim than its failure
to invoke it (i.e., along with the
other defensive matters it asserted subject to its jurisdictional
challenge).  If the majority holding is
correct, a party with an arguable claim to arbitration would be well advised to
refrain from raising it in a foreign lawsuit so as to assure that any adverse
foreign judgment would not be recognized in a United
 States court.  However, because I believe this is contrary
to the law regarding recognition of foreign judgments, I would not affirm the
trial court’s denial of recognition of the Japanese judgment on the ground that
the Japanese proceeding was contrary to the parties’ agreement to arbitrate.

 

                                                                                    

                                                                        /s/        Richard H. Edelman

                                                                                    Justice

 

Judgment
rendered and Majority and Dissenting Opinions filed August 22, 2002.

Panel
consists of Justices Anderson, Hudson, and Edelman.

Publish — Tex. R. App. P. 47.3(b).

 

 











            [1]  According to Courage’s pleading filed in the
Tokyo District Court, the original distributor agreement expired at the end of
January 1991.





            [2]  The arbitration clause contained an exception
for the violation or threatened violations of the agreement’s confidentiality
provisions or ChemShare’s proprietary rights, neither
of which is relevant here.





            [3]  Under the Distribution Agreement, “Products”
refers to “the software programs and related documentation and services listed
in Appendix A, which are owned or licensed by ChemShare
and/or its licensors and are offered for sale by ChemShare’s
Advanced Engineering Software Division and are to be sublicensed by [ISI-Dentsu] pursuant to the terms of this Agreement.”  Appendix A includes DesignMASTER
software.





            [4]  ChemShare
contended, and the Harris County District Court found, that it was unable to
hire an attorney to represent the company in the Japanese litigation because of
the high attorney’s fees and retainers charged by the attorneys licensed to
practice in the Japanese courts.





            [5]  Courage also asserts that ChemShare
waived any right to arbitration by filing a lawsuit against Courage in another
district court of Harris County, Texas in 1998. 
ChemShare objects to this assertion on the
grounds that the issue is outside the scope of the appeal because ChemShare’s petition was not part of the appellate
record.  ChemShare
urges that the copy of the petition attached to Courage’s brief be
stricken.  See, e.g., Perry v. Kroger
Stores, Store No. 119, 741 S.W.2d 533, 534 (Tex. App.Dallas
1987, no writ) (stating that the attachment of documents as exhibits or
appendices to briefs is not formal inclusion in the record on appeal and,
therefore, the documents cannot be considered). 
Moreover, Courage does not direct us to any place in the record to
support its waiver argument, and the record contains no transcription of oral
argument.  Therefore, Courage has waived
this unsupported contention.  Tex. R. App. P. 38.1(h).





            [6]  We also note that ISI-Dentsu
assigned to Courage its “rights and claims under or related to” the Development
Agreement “together with all other agreements with ChemShare
related or collateral thereto.”





            [7]  For the same reasons, we reject any assertion
that ChemShare’s initial effort to seek a continuance
from the Tokyo District Court constituted a general or unconditional
appearance.





            [8]  See
Tex. Civ. Prac. & Rem. Code Ann.
§ 36.005(b)(5) (Vernon 1997).





            [9]  See
Dart v. Balaam, 953 S.W.2d 478, 480 (Tex. App.—Fort Worth 1997, no writ).