**CROWN WESTERN INVESTMENTS, INC., Appellant,**

**v.**

**MERCANTILE NATIONAL BANK AT DALLAS, Appellee.**

No. 747.

Court of Civil Appeals of Texas, Tyler.

Jan. 10, 1974.

Rehearing Denied Feb. 7, 1974.

Dean Carlton, Dallas, for appellant.

Hubert D. Johnson, H. Dee Johnson, Jr., of Johnson & Cravens, Dallas, for appellee.

McKAY, Justice.

This appeal involves the construction of a contract between Crown Western Investments, Inc. and Mercantile National Bank at Dallas. The case was submitted to the trial court on stipulated facts. The two questions in dispute were (1) whether the bank was entitled to a closing fee when the custodial agreement between it and Crown Western was terminated, and (2) whether the bank was entitled to recover its attorneys' fees because of the instant suit. The trial court held the bank was entitled to both the closing fee and it's attorneys' fees, and Crown Western brings this appeal.

In June, 1945, Crown Western, a mutual fund, and the bank entered into a custodial agreement, and contemporaneous with such agreement, a letter dated June 25, 1945, was written by an officer of the bank in which a fee arrangement was outlined which included an acceptance fee, fees for holding securities, disbursement of dividends and an annual fee, and also a closing or termination fee of ½₀ of 1% of the reasonable value of all securities held and providing a minimum therefor of $250.00. Only the closing fee is in dispute here.

An authorized officer of the bank wrote Crown Western three letters dated August 15, August 18 and August 26, 1955, outlining new fee schedules for services by the bank, but there was no provision in the letters nor any reference to or mention of a closing fee or termination fee.

The first paragraph of the August 15th letter from the bank read as follows:

"Pursuant to our recent discussions, we propose hereafter a revision in the basis and rate of charges applicable to the above captioned accounts insofar as our services as custodian are concerned."

Crown Western, through its president, replied to the bank by letter dated August 31, 1955, as follows:

"We have your letters of August 15, August 18 and August 26, 1955, through

which you are setting forth the fees payable by Crown Western Investments, Inc. for custodianship and other services during the year 1955.

"We accept these letters as the basis for a new agreement on fee payments between this Company and Mercantile National Bank.

"It is our understanding that this new schedule supersedes the original agreement made in 1945 and the supplements thereto."

It was stipulated that if the bank was entitled to a closing fee, it would be $17,875.68, which amount the Bank retained upon termination of the custodial agreement, and which act of retention of such amount brought about this litigation.

Crown Western contends by its first two points that the 1955 letter agreements on fees superseded and eliminated the authorization for the termination or closing fee, and that the fee schedule, as changed in 1955, did not provide for a termination or closing fee. As pointed out, the three letters of August, 1955, were silent as to any closing fee. The original contract of 1945 had a provision which read "Upon Written Order pursuant to paragraph 5 of this agreement, the Custodian shall be paid out of the Bank account such compensation and at such times as may from time to time be agreed on by the parties * * *." As hereinbefore pointed out, the June 25, 1945, letter, as a part of the 1945 agreement, provided for a closing fee of ½₀ of 1% of the reasonable value of all securities held at the time of termination.

■■■ Both parties agree that there is no ambiguity in the agreements; therefore, the construction of the instruments is a question of law, and "where an unambiguous writing has been entered into between the parties, the Courts will give effect to the intention of the parties as expressed or as is apparent in the writing." City of Pinehurst v. Spooner Addition Water Co., 432 S.W.2d 515 (Tex.Sup., 1968). As ex-

pressed in Spence & Howe Construction Co. v. Gulf Oil Corp., 365 S.W.2d 631 (Tex.Sup., 1963), where the construction of a contract is in issue, "We are to take the wording of the instrument, consider the same in the light of the surrounding circumstances, and apply the pertinent rules of construction thereto and thus settle the meaning of the contract."

■■■ It has long been the rule in Texas that written contracts executed in different instruments whereby a single transaction or purpose is consummated are to be taken together as one contract. Veal v. Thomason, 138 Tex. 341, 159 S.W.2d 472 (1942). Where two instruments pertain to the same transaction they will be considered together even though they do not expressly refer to each other. Parks v. Frankfurt, 476 S.W.2d 717 (Tex.Civ.App. —Beaumont, 1972, writ ref'd, n. r. e.). There is no contention here that the written custodial contract of 1945 and the contemporaneously written letter outlining fees to be charged by the bank were not each a part of one contract. There is no dispute that the fee schedule which was a part of the 1945 contract provided for a closing fee and was a binding contract between the parties.

■■■ In 17A C.J.S. Contracts § 297, page 107, is this language:

"In the absence of fraud or concealment on the part of the person who prepared the instrument, a contract must be read, construed, interpreted, or considered as a whole, or in its entirety; this rule, or principal, has been held to be a basic one in the construction or interpretation of contracts, as well as a cardinal, rule, or, as has been otherwise held by courts, a fundamental, primary, or universal rule, or principal, and has been announced under statutory provisions.

"The intention, or purpose, of the parties to a contract is to be collected, ascertained, or gathered from the entire instrument, or the instrument as a whole,

and not from detached or isolated portions, or provisions, or fragmentary parts; and it is necessary to consider all of its parts or provisions in order to determine the meaning of any particular part, or of particular language, as well as of the whole."

The above rules of constructions are recognized in Texas. Steeger v. Beard Drilling, Inc., 371 S.W.2d 684 (Tex.Sup., 1963); General American Indemnity Co. v. Pepper, 161 Tex. 263, 339 S.W.2d 660 (1960); 13 Tex.Jur. Contracts, Sec. 113, 122; Ervay, Inc. v. Wood, 373 S.W.2d 380 (Tex.Civ.App.—Dallas, 1963, writ ref'd, n. r. e.).

■ In 17A C.J.S. Contracts § 298, p. 135, is found this statement:

"Where a contract is made by correspondence, the intent of the parties is to be gathered from the whole thereof. So, where the parties by correspondence agreed to a change in a prior written contract, the agreement will be gathered from the written contract and the correspondence considered as a whole."

■ Professor Corbin in his work on contracts, 6 Corbin on Contracts, Sec. 1293, p. 198, has this to say:

"A difficult question of interpretation may arise when a second contract deals with the same subject matter as did the first contract made by the same parties, but does not state whether or to what extent it is intended to operate in discharge or substitution. The two contracts must be interpreted together. In so far as they are inconsistent, the later one prevails; the remainder of the first contract, being quite consistent with the second in substance and in purpose may be enforced."

■ With these recognized rules before us, we turn to a determination of the question: What was the intention of the parties in the exchange of the letters in 1955 setting new basis and rates for the custodial services of the bank? When we apply the "four corners rule" to the 1945 instruments and the 1955 letters, we conclude that the parties intended to change or modify the basis and fee rates for the services the bank rendered to Crown Western during the regular course of business between them, but they did not intend to eliminate the provision in the 1945 agreement providing for closing fees. There is nothing to indicate that either party had in mind at the time of the exchange of letters in 1955 that the termination of the custodial contract, and the fee schedule for such termination, were of such significance in their relationship to be re-negotiated. We hold the provision in the 1945 agreement for 1/20 of 1% of the reasonable value of all securities held remained as a valid part of the contract between the parties.

We are urged by Crown Western to hold the rule "expressio unius est exclusio alterius," applies here. This rule means that the expression of one or more things implies the exclusion of all others not expressed. This rule is recognized in Texas. First National Bank of Luling v. Nugent, 384 S.W.2d 224 (Tex.Civ.App.—San Antonio, 1964, writ ref'd, n. r. e.). Crown Western says that the new fee schedule set out in the 1955 letters controls because all basis and rate schedules were set out except the closing fee rate, and that the silence or omission of the closing fee rate implies it was intended to be excluded. We do not believe this rule is applicable to the instant case. The 1945 agreement consisted of seven pages of terms and conditions; the schedule of fees was listed in a letter from a bank officer to Crown Western. All of the terms and conditions of the contract remained in force and effect, and those fee rates which were not changed by the 1955 letters remained as a part of the contract. Weil v. Ann Lewis Shops, 281 S.W.2d 651 (Tex.Civ.App.—San Antonio, 1955, writ ref'd); 13 Tex.Jur.2d Contracts, sec. 140, p. 320.

■ We are also urged to follow the rule that in case of reasonable doubt as to

which construction more nearly follows the intent of the parties, the construction which is least favorable to the party who prepared the instrument should prevail. This rule is usually applied only when the contract is ambiguous. See Restatement of Contracts, sec. 236. It was stipulated that the contract in question here was not ambiguous. Universal C. I. T. Credit Corp. v. Daniel, 150 Tex. 513, 243 S.W.2d 154 (1951).

It is true that the bank's letter of August 15, 1955, contained the language "we propose hereafter a revision in the basis and rate of charges applicable to the above captioned accounts *insofar as our services as custodian are concerned.*" We believe the emphasized words (emphasis ours) indicate the new rates applied to "our services as custodian," and were not intended to apply to or eliminate fees or rates for termination of custodianship. We think this interpretation is not only what the parties intended to say, but also the meaning of what they did say. The language of Crown Western's letter wherein the word "new" and the word "supersede" appear, we believe refer to those rate and fee items enumerated in the bank's letters, and that such words do not eliminate other language in the 1945 contract.

Additional support is given to our view by the language of the bank's letter of August 15, 1955, to Crown Western:

"We must reserve the right to test the application of the following schedule against actual operations and should it be found that we have been overly optimistic in estimating the reduction that can safely be made we will expect to receive the same considerate cooperation as we have always enjoyed in business dealings with you."

and by the language in the bank's letter of August 26, 1955:

"It is further understood that the results of the application of this revised schedule will be observed for the ensuing year of operation and if such results should be found to be burdensome either to you or to us we both shall feel free to propose any further amendments that experience may dictate as necessary or advisable."

The 1955 letters were silent as to termination arrangements as well as fees therefor. The provision that the custodial agreement could be terminated on 60-days notice remained unmodified.

Points one and two of appellant Crown Western are overruled.

By its third point Crown Western complains that the trial court erred in awarding attorney's fees to the bank because fees incurred in defending this suit were not contemplated or authorized by the agreement. The section of the agreement in question reads as follows:

"20.b Should the Custodian become involved in litigation in any manner whatsoever on account of this Agreement, the Investment Corporation shall pay to the Custodian all reasonable attorneys' fees incurred by said Custodian, and any other disbursements, expenses, losses, costs and damages in connection with, and resulting from such litigation, and the Custodian shall have a lien upon the Securities and the Bank Account for all such attorneys' fees, disbursements, expenses, losses, costs and damages."

The attorney's fees involved are contractual, and the language of the agreement seems to be clear. The provision that *"Should the Custodian become involved in litigation in any manner whatsoever on account of this Agreement"* then Crown Western would pay all reasonable attorney's fees indicates that Crown Western agreed to pay the bank's attorney's fees for any litigation involving the agreement including a suit by Crown Western attempting to recover termination fees withheld by the bank. If the parties had intended that Crown Western would pay attorney's fees incurred by the bank only

under circumstances where the bank was involved as custodian in litigation with a third party then they should have included that in the agreement. Under the language used, Crown Western agreed to pay the bank's attorneys' fees for any litigation on account of the agreement, including a suit between the parties.

Where language is plain and unambiguous we must enforce the contract as made by the parties and accord the provisions thereof their ordinary and commonly accepted meaning. Reliable Life Ins. Co. v. Steptoe, 435 S.W.2d 630 (Tex.Civ. App.—Tyler, 1968, no writ). In an unambiguous writing the courts will give effect to the intention of the parties as expressed or as is apparent in the writing. City of Pinehurst v. Spooner Addition Water Co., supra. The court cannot rewrite the contract. Royal Indemnity Co. v. Marshall, 388 S.W.2d 176 (Tex.Sup., 1965). Crown Western's third point is overruled.

Judgment of the trial court is affirmed.