**Dennis COOPER, Appellant,**

v.

**Frank L. SUPERCINSKI, et al, Appellees.**

**No. 10–85–106–CV.**

Court of Appeals of Texas, Waco.

Sept. 5, 1985.

Rehearing Denied Sept. 26, 1985.

Larry R. Wright, Smith, Ralston, Russell & Wright, Corsicana, for appellant.

Frank L. Supercinski, Longview, for appellees.

OPINION

JAMES, Justice.

This case grew out of the sale of an insurance agency and certain real and personal property. On March 11, 1980, Plaintiff-Appellant Cooper as buyer entered into a written agreement and contract of sale with E.D. (Chick) Reed and wife Vivian Reed as sellers concerning a proposed sale of the Chick Reed Insurance Agency, an office building, and office equipment.

In its pertinent parts the written contract provided that Cooper agreed to pay $55,000.00 for the real estate in cash at the time of closing, with Cooper's obligation to purchase the real estate being conditioned on his obtaining suitable financing covering not less than 90% of the purchase price, and further contingent upon Cooper's closing his purchase of the insurance agency.

The pertinent parts of the agreement dealing with the sale and purchase of the Chick Reed Insurance Agency are contained in paragraphs 2 and 9 as follows:

"2. Seller agrees to sell and Buyer agrees to buy Seller's interest in the insurance business owned by Seller and operated under the name of 'Chick Reed Insurance', including but not limited to all items of tangible personal property, insurance expirations, policies, contracts, and any other item of tangible or intangible property used by Seller in connection with such in-

surance business. The total purchase price of such insurance business shall be an amount equal to two (2) times the gross commission income for the agency in the year 1979. Subject to Buyer's review and approval, the actual purchase amount shall be determined from the books and records of Seller by Seller's accountant, not later than thirty (30) days from the date of execution of this Agreement."

\*     \*     \*     \*     \*     \*

"9. Seller agrees that Seller will pay any and all commission refunds which result from policy cancellations occurring after the date of closing, where such commission was originally earned and collected by Seller prior to the date of closing. Seller further agrees that in the event a policy is cancelled after closing and such policy was issued in the calendar year 1979 for which Seller received a commission and such commission was used in determining Buyer's purchase price, Seller will reimburse Buyer double the amount of commission on such policy included in the 1979 gross commission of Seller's agency and used to determine Buyer's purchase price. It is the intent of this Agreement to reduce the total purchase price by the amount of any commissions used to compute such price but later lost because of policy cancellations. Seller agrees to reimburse Buyer within thirty (30) days of written notice and demand for reimbursement."

Paragraph 5 made Buyer Cooper's obligation to perform contingent upon his obtaining suitable financing for not less than 90% of the total purchase price under this agreement.

Then on March 11, 1980, the same date borne by the original agreement, the parties executed another written instrument called "Addendum to Contract of Sale", wherein the term "tangible personal property" was defined with more precision, and a value of $2,500.00 was put on said property, to be paid by Cooper to the Reeds at closing as a part of the purchase price.

Then the last paragraph of the "Addendum" is worded as follows:

"Notwithstanding any of the provisions in the aforementioned Contract, Buyer agrees to pay to Sellers 29% in cash at the time of the sale consummation and to execute and deliver to Sellers his promissory Note equal to the balance of said total purchase price, which said Note shall bear interest from date at the rate of 13% per annum, and the principal of which shall be paid in four equal annual installments with accrued interest on said principal being paid at each principal payment period. Said Note shall be secured by vendor's lien retained in the Deed conveying said real estate, by a Deed of Trust given on said real estate, and by proper and sufficient Security Agreements on all personal property, tangible or intangible."

On April 4, 1980, the parties closed the transaction at which time Cooper paid $30,000.00 cash and executed a vendor's lien note payable to the Reeds in the principal amount of $82,000.00, said down payment and note comprising a total purchase price of $112,000.00. The Reeds executed a warranty deed of the real estate to Cooper wherein the Reeds reserved a vendor's lien to secure the payment of the $82,000.00 note. Cooper executed a deed of trust to J.C. Roe, Trustee, conveying the subject realty to further secure the payment of said $82,000.00 vendor's lien note.

As stated, said note was payable to E.D. Reed and wife Vivian Reed, was dated April 4, 1980, and bore interest from date at the rate of 13% per annum until maturity, and thereafter at the rate of 10% per annum until paid. The note was payable in 4 equal annual installments of $20,500.00 each of principal plus accrued interest, the payment dates being on or before the 4th day of April of the years 1981, 1982, 1983, and 1984. Said note further provided that the maker (Cooper) agreed to pay an additional amount of 10% of the amount due as attorney's fees, if the note is sued upon or placed in the hands of an attorney for collection.

The purchase price of the insurance agency was arrived at in this manner: As stated, paragraph 2 of the original contract

provided that the total purchase price of the agency "shall be an amount equal to two (2) times the gross commission income for the agency in the year 1979," determined from the Sellers' books and records. The gross commission income for 1979 was determined to be $27,500.00, thereby making the purchase price of the agency $55,000.00.

On or about April 4, 1981, Cooper paid the first principal installment of $20,500.00 plus the accrued interest; on or about April 4, 1982, he paid the second $20,500.00 and all of the accrued interest except $434.97; on or about April 4, 1983, he paid the third $20,500.00 principal installment plus all the interest except $1,321.52. This means that on April 4, 1984, Cooper owed the fourth and final $20,500.00 principal installment plus accrued interest.

Cooper did not pay anything on the April 4, 1984 maturity date; however, by a letter from his attorney to the Reeds' attorney dated April 25, 1984, Cooper asserted that he had lost $7,425.00 in policy "expirations" during the first year; that under paragraph 9 of the original agreement dealing with policy "cancellations" he (Cooper) was entitled to a credit of twice that amount or $14,850.00. Under his calculations, after applying this credit against the total amount of principal paid, Cooper concluded that he owed a balance of only $1,261.00 of principal and interest, which he tendered by check in full settlement of his obligation.

Meanwhile, at some point in time prior to this suit being filed, E.D. (Chick) Reed died, and his widow, Vivian Reed, was made Independent Executrix of his estate. Vivian Reed, in her individual capacity as well as in her capacity as Independent Executrix of her deceased husband's estate, appointed Frank L. Supercinski substitute trustee under the deed of trust; whereupon Supercinski posted notices of a trustee's sale for foreclosure of the subject real estate.

At this point Appellant Cooper filed suit against Vivian Reed, individually and as independent executrix of the Estate of E.D. Reed, Deceased, and Frank L. Supercinski,

individually and as Substitute Trustee, for a declaratory judgment construing the contract and for temporary and permanent injunctive relief concerning the foreclosure proceedings. More specifically, Plaintiff-Appellant Cooper asserted that there were cancellations of 1979 policies on which commissions of $12,512.50 had been paid, which (he says) meant that he was entitled to a credit of twice that amount or $25,025.00 against the $82,000.00 note owed to the Reeds.

The Defendant-Appellees answered and filed a cross-action against Plaintiff-Appellant Cooper contending that Cooper was not entitled to any credits on the note, and sued for judgment for the unpaid balance on the note, for attorney's fees as provided by said note, and for permission to foreclose under the deed of trust.

The case was tried to a jury which in answer to two special issues found as follows:

(1.) That Cooper is entitled to a reimbursement by the Reeds under the agreements.

(2.) The amount of money owed by the Reeds to Cooper under the agreements is $14,850.00.

Appellant Cooper moved for judgment on the verdict. Appellees (the Reeds and Supercinski) moved for judgment notwithstanding the verdict. The trial court overruled Cooper's motion and granted the Appellees' motion for judgment N.O.V. and thereby entered judgment in favor of Vivian Reed against Cooper in the amount of $27,625.43, same being the unpaid principal and prejudgment interest due and owing on the $82,000.00 note, plus interest (on $27,625.43) at 13% per annum from the date of judgment until paid, plus 10% of all unpaid principal and interest as attorney's fees. The trial court also set aside the temporary injunction that he had theretofore granted.

Appellant comes to this court on five points of error. Points one and two assert the trial court erred in overruling Cooper's Motion for Judgment on the Verdict because (1.) there was evidence of probative

force upon which the jury could have made its findings, and (2.) because a directed verdict was not proper. Point three contends the trial court erred in granting the Reeds' motion for judgment N.O.V. because there was insufficient evidence to support the award for recovery on the note. Points four and five argue that the trial court erred in granting the Reeds' motion for judgment N.O.V. because (1.) there is no evidence to support the award of post-judgment interest at the rate of 13% per annum, and (2.) because there is no evidence to support an award for attorney's fees.

We sustain Appellant's fourth point of error, complaining of the award of post-judgment interest at the rate of 13% per annum, and thereby reform the judgment so as to show post-judgment interest at the rate of 10% per annum as provided by the note itself, and as reformed, we overrule all the remaining points of error and affirm the trial court's judgment.

■ The crux of the controversy between the parties stems from a dispute over the interpretation and legal effect of paragraph 9 of the original agreement, providing for a refund or adjustment of the purchase price based upon policy cancellations. In essence, Appellant Cooper contends that he is entitled to a credit of $25,025.00 in all, based upon policy "expirations" occurring not only in 1979 but also for succeeding years up to the time the note matured. The Appellees took the position that the provisions of paragraph 9 of the original agreement had no application because it conflicted with, and was superseded by the addendum, the note, the warranty deed, and the deed of trust. Appellees also contended that if paragraph 9 of the original agreement was still legally effective, that any adjustment of the purchase price would be limited to policy "cancellations" occurring during the year in which the agreements were made, and not policy "expirations."

We are of the opinion and hold that paragraph 9 of the original agreement, providing for adjustment of the purchase price, is inconsistent with, and conflicts with the Addendum, the note, the deed, and the deed of trust. The trial court correctly rendered judgment non obstante veredicto because a directed verdict would have been proper. Rule 301, Texas Rules of Civil Procedure. If there is no ambiguity, the construction of written instruments is a question of law for the court. *Myers v. Gulf Coast Minerals Management Corp.* (Tex.1962) 361 S.W.2d 193, 196.

The original agreement contemplated that Cooper would secure financing from a third party, and provided that Cooper would pay $55,000.00 cash for the real estate at the time of closing. To the contrary, the Addendum contemplated that the Reeds would do the financing and that Cooper would be required to pay only 29% down in cash at closing, and give a note for the balance of the purchase price, secured by a vendor's lien and deed of trust.

We believe the last paragraph of the Addendum, hereinabove quoted, beginning with the words "Notwithstanding any of the provisions in the aforementioned contract …," is unambiguous in rendering inoperative the provisions of paragraph 9 of the original agreement. Moreover, the $82,000.00 note is an unequivocal promise to pay $82,000.00 as balance of the purchase price in four equal annual installments plus interest. Provisions in the deed and deed of trust are likewise consistent with the addendum.

*Crown Western Investments, Inc. v. Mercantile National Bank* (Tyler CA 1974) 504 S.W.2d 785, no writ, at page 789, quotes the following passage in 6 Corbin on Contracts, Sec. 1293, p. 198:

"A difficult question of interpretation may arise when a second contract deals with the same subject matter as did the first contract made by the same parties, but does not state whether or to what extent it is intended to operate in discharge or substitution. The two contracts must be interpreted together. Insofar as they are inconsistent, the later one prevails; the remainder of the first contract, being quite

consistent with the second in substance and in purpose may be enforced."

■ It is settled that when contracting parties have concluded a valid integrated agreement, dealing with the particular subject matter they have between them, the parol evidence rule will prevent enforcement of prior or contemporaneous agreements which are inconsistent with the integrated agreement. The rule precluding proof of the inconsistent agreements is not a mere rule of evidence but is a rule of substantive law. *Hubacek v. Ennis State Bank* (Tex.1958) 159 Tex. 166, 317 S.W.2d 30, 32; *Reeves v. Lago Vista, Inc.* (Austin CA 1973) 497 S.W.2d 950, 953, NRE; *McPherson v. Longview United Pentecostal Church, Inc.* (Tyler 1976) 540 S.W.2d 424, 431–2, NRE; *Weinacht v. Phillips Coal Co.* (Dallas CA 1984) 673 S.W.2d 677, no writ.

Based upon the foregoing authorities, we are of the opinion and hold that the trial court acted properly in granting Appellees' motion for judgment non obstante veredicto. The note was in evidence, and there is no dispute over how much Appellant Cooper had paid upon the note; therefore the trial court's judgment for the unpaid balance of principal and interest was capable of mathematical computation.

■ However, Appellant's fourth point complains of the judgment's provision of post-judgment interest at the rate of 13% per annum. We sustain this point of error. The note calls for interest at the rate of 13% per annum to maturity, and thereafter at 10% per annum. The note matured on April 4, 1984. The trial court's judgment was subsequent to maturity, and was dated January 8, 1985. The judgment is hereby reformed so as to provide post-judgment interest at 10% per annum instead of 13% per annum.

■ Appellant's fifth and final point asserts there was no evidence to support the award for attorney's fees. The note provides for 10% of the amount due as attorney's fees if the note is sued upon or placed in the hands of an attorney for collection.

Appellant Cooper pleaded that the note provides for attorney's fees in an amount of 10% of the amount due. In order to make a proper showing that the amount of attorney's fees provided in the note should be reduced, the obligor (Cooper) must first plead and prove that the contractual fee is unreasonable. *F.R. Hernandez Construction Co. v. National Bank of Commerce* (Tex.1979) 578 S.W.2d 675, 677. In the case at bar, Appellant Cooper did not so plead and prove. Appellant's fifth point is overruled.

We hereby reform the judgment reducing post-judgment interest from 13% per annum to 10% per annum, and as reformed, we affirm the trial court's judgment.