**THE COURAGE COMPANY, L.L.C., Appellant,**

v.

**THE CHEMSHARE CORPORATION, Appellee.**

No. 14–00–00798–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 22, 2002.

Revised Dissenting Opinion Nov. 27, 2002.

Rehearing Overruled Nov. 27, 2002.

**326**

Allyson L. Mihalick, Jeff Nobles, Houston, for appellants.

David K. Anderson, Julie B. Cunningham, Houston, for appellees.

Panel consists of Justices ANDERSON, HUDSON, and EDELMAN.

## MAJORITY OPINION

JOHN S. ANDERSON, Justice.

This is an appeal from a Harris County district court's judgment denying recognition of a foreign money judgment that appellant, The Courage Company, L.L.C. ("Courage") obtained against appellee, The ChemShare Corporation ("ChemShare") in the District Court of Tokyo, Japan. Courage challenges the district court's determination that the Japanese judgment was not entitled to recognition or enforcement in Texas for the following reasons: (1) the Japanese system did not provide procedures compatible with due process because it did not provide for jury trials; (2) the Tokyo District Court did not have personal jurisdiction over ChemShare; (3) Courage's cause of action was repugnant to the public policy of Texas; (4) the parties agreed to submit to arbitration; (5) Japan was a seriously inconvenient forum for ChemShare; and (6) Courage failed to comply with the procedural requirements of the Texas Uniform Foreign Country Money–Judgment Recognition Act ("UFCMJRA") by failing to provide a properly authenticated translation of the judgment. Because the parties had agreed to submit to arbitration, we affirm on that ground and do not reach Courage's other issues.

## PROCEDURAL BACKGROUND

In August of 1998, Courage, a Virginia limited liability company, sued ChemShare and another company, Winsim, Inc., both Texas corporations, in the District Court of Tokyo, Japan. Courage sought restitution of over $1.2 million allegedly owed by ChemShare under an agreement known as the DesignMASTER Development Agreement (Development Agreement). Courage brought the suit shortly after obtaining its interest in the Development Agreement by assignment from Information Services International–Dentsu, Limited ("ISI–Dentsu"), a Japanese company that originally entered into the agreement with ChemShare. ChemShare filed a reply in the Tokyo District Court, asserting a jurisdictional defense, contesting Courage's standing to bring the suit, and raising forum non conveniens objections. The record discloses no other appearance by ChemShare prior to the pronouncement of the Tokyo District Court's judgment on December 3, 1999.

In its judgment, the Tokyo District Court rejected ChemShare's jurisdictional challenge and ordered ChemShare to pay Courage $1,080,977.49, together with interest on a down payment of $730,054.02, and a portion of the court costs. The court dismissed Courage's claims against Winsim, Inc. for lack of jurisdiction.

Courage subsequently filed a Notice of Filing of Foreign Judgment and supporting affidavit in the Harris County District Court to obtain recognition of the judgment. In response, ChemShare filed a Motion for Nonrecognition of Foreign Country Money Judgment, alleging two mandatory and three discretionary grounds for nonrecognition under the UFCMJRA, and further alleging that Courage failed to satisfy the procedural requirements of the UFCMJRA. In an order dated June 5, 2000, the trial court granted ChemShare's motion, holding that the judgment rendered by the Tokyo District Court on December 3, 1999 was refused recognition and was not enforceable in Texas.

Courage moved for new trial or for reconsideration of the trial court's order refusing recognition, which the trial court denied. At Courage's request, the trial court made findings of fact and conclusions of law. Because the court adopted the proposed findings of fact and conclusions of law submitted by ChemShare, Courage objected to a number of them. The trial court overruled the objections, but amended the findings of fact and conclusions of law previously entered to correct several typographical errors and to correct the identification of a conclusion of law as a finding of fact. This appeal followed.

### FACTUAL BACKGROUND

The facts relevant to the disposition of this appeal are as follows. ChemShare

was a Texas corporation that designed and developed simulation software programs used in chemical plants and refineries. ISI–Dentsu was a Japanese company engaged in the computer-aided design business. In 1986, ChemShare and ISI–Dentsu entered into a distributor agreement, in which the parties agreed that ISI–Dentsu would distribute ChemShare's simulation software products to ISI–Dentsu's customers in Japan, and ChemShare would receive royalty payments on ISI–Dentsu's sales of ChemShare's products.

Following the expiration of the initial distributor agreement in 1991,[1] ChemShare and ISI–Dentsu continued to conduct business as they had done in the past while they negotiated a new distributor agreement. ChemShare had created a software program known as DesignMASTER that provided an integration system for process engineering tasks, and ISI–Dentsu proposed that ChemShare modify and enhance the DesignMASTER program based on specifications provided by ISI–Dentsu. In November 1991, ChemShare and ISI–Dentsu entered into the DesignMASTER Development Agreement (the "Development Agreement"), in which ISI–Dentsu agreed to cover a portion of the costs associated with the development and enhancement of the DesignMASTER products by prepaying royalties that would be due ChemShare under the new distribution agreement for the anticipated future sales of ChemShare's products. The Development Agreement provided as follows:

> All enhancements and developments made hereunder by ChemShare shall be deemed to be the enhancement of DesignMASTER under the Distributor Agreement, thus [ISI–Dentsu] shall be

---

1. According to Courage's pleading filed in the Tokyo District Court, the original distributor agreement expired at the end of January 1991.

granted by ChemShare the same distribution right in Japan of the enhancements and developments of DesignMASTER as currently exist under the proposed Distributor Agreement.

The Development Agreement also provided that ChemShare was to complete the development of DesignMASTER in accordance with a development schedule that contemplated completion in June of 1992. ISI–Dentsu agreed to pay ChemShare in accordance with an attached disbursement schedule that contemplated payments from November 1991 through October 1992. The Development Agreement recited that the payments were "a prepayment of the portion of royalties to be remitted by [ISI–Dentsu] to ChemShare under the Distributor Agreement."

The Development Agreement contained a choice of law provision specifying that the Development Agreement "shall be governed by and construed in accordance with the laws of Japan." It also contained a forum selection clause providing as follows:

> ChemShare hereby irrevocably and unconditionally submits to the non-exclusive jurisdiction of the Tokyo District Court, in relation to any claim, dispute or difference which may arise under this Agreement, but without prejudice to the rights of [ISI–Dentsu] to commence any legal action or proceeding in the courts of any other competent jurisdiction.

Following the execution of the Development Agreement, ChemShare and ISI–Dentsu completed negotiations of the terms of a new distributor agreement.

The new agreement, entitled "Distribution Agreement," was dated June 11, 1992, and had a retroactive effective date of April 1, 1991.

In contrast to the Development Agreement, the Distribution Agreement provided for arbitration of "any dispute or difference arising out of or relating to this Agreement." [2] Arbitration was to be held according to the Rules of Conciliation and Arbitration of the International Chamber of Commerce. In the event that ChemShare initiated a dispute, the arbitration was to be held in Tokyo, Japan. In the event that ISI–Dentsu initiated a dispute, the arbitration was to be to be held in Houston, Texas. In either case, the arbitration was to be held in the English language, and the construction of the agreement was to be governed by Texas law. The Distribution Agreement also provided that its terms and conditions superseded those of all previous agreements between ChemShare and ISI–Dentsu with respect to the "Products." [3] Further, the agreement was not assignable without the prior written consent of ChemShare.

In 1994, ISI–Dentsu decided to withdraw from the computer-aided engineering business in the chemical industry and notified ChemShare of its decision to start phasing out of ChemShare's business. ISI–Dentsu demanded restitution of the prepayments that it had made to ChemShare under the Development Agreement that were allegedly outstanding at the time. ChemShare and ISI–Dentsu decided to terminate their business relationship,

**2.** The arbitration clause contained an exception for the violation or threatened violations of the agreement's confidentiality provisions or ChemShare's proprietary rights, neither of which is relevant here.

**3.** Under the Distribution Agreement, "Products" refers to "the software programs and related documentation and services listed in Appendix A, which are owned or licensed by ChemShare and/or its licensors and are offered for sale by ChemShare's Advanced Engineering Software Division and are to be sublicensed by [ISI–Dentsu] pursuant to the terms of this Agreement." Appendix A includes DesignMASTER software.

and in March 1995, executed a Termination Agreement. Under the Termination Agreement, the parties agreed that the termination of the Distribution Agreement "shall not otherwise affect any rights or obligations of the parties accrued or vested prior to termination."

On June 1, 1998, ISI–Dentsu transferred and assigned to Courage "all of its right, title and interest in and to the Agreement, together with any other rights and claims [ISI–Dentsu] may otherwise have against ChemShare or parties related to ChemShare." The "Agreement" was defined as the DesignMASTER Development Agreement "together with all other agreements with ChemShare related or collateral thereto." Shortly thereafter, Courage, a Virginia limited liability company with its principal place of business in the United States, filed its lawsuit in the District Court of Tokyo, Japan, seeking to recover more than $1.2 million in prepayments made by ISI–Dentsu to ChemShare under the Development Agreement. At the time of the lawsuit, ChemShare's principal place of business was located in Sugar Land, Fort Bend County, Texas.

In response to Courage's lawsuit, ChemShare, on behalf of itself and its co-defendant, Winsim, Inc., first requested a continuance to enable it to obtain legal counsel in Japan, noting the "special circumstances" that both the plaintiff and the defendants were United States companies, the difficulty in locating Japanese counsel, and the inconvenience to the defendants. ChemShare then appeared for the limited purpose of asserting a jurisdictional defense, to question Courage's standing to bring the lawsuit, and to assert an objection to the Japanese forum based on forum non conveniens grounds. ChemShare apparently was unable to obtain Japanese legal counsel to represent it, and made no other appearance.[4]

The Tokyo District Court's judgment reflects that oral argument was heard on Courage's claims, and the judgment was rendered by a three-judge panel. In a detailed opinion, the Tokyo District Court rejected ChemShare's jurisdictional argument, primarily because of the provision in the Development Agreement in which the parties agreed to submit disputes to the nonexclusive jurisdiction of the Tokyo District Court. There is no evidence that the Tokyo District Court was provided with a copy of the Distribution Agreement, which provided that disputes arising from or relating to the Agreement were to be conclusively settled by arbitration. Rejecting ChemShare's jurisdictional arguments, the Tokyo District Court found in favor of Courage on its claim for restitution and entered its judgment accordingly. Defendant Winsim, Inc., however, was dismissed from the lawsuit for lack of jurisdiction.

Armed with its judgment from the Tokyo District Court, Courage sought recognition of the judgment by filing it in the district court of Harris County, Texas. ChemShare objected to the filing and moved for nonrecognition of the judgment, asserting two mandatory and three discretionary grounds for refusing recognition under the UFCMJRA, and additionally asserting that the filing was procedurally defective. After receiving Courage's response to the motion, the district court granted ChemShare's motion for nonrecognition, and entered an order reflecting that recognition was refused and the judgment was not enforceable in Texas.

---

4. ChemShare contended, and the Harris County District Court found, that it was unable to hire an attorney to represent the company in the Japanese litigation because of the high attorney's fees and retainers charged by the attorneys licensed to practice in the Japanese courts.

## DISCUSSION

On appeal, Courage asserts that the district court erred in granting ChemShare's motion for nonrecognition for the following reasons: (1) the absence of a jury trial right does not prevent recognition and enforcement of a foreign country judgment; (2) ChemShare consented to the jurisdiction of the Tokyo District Court in the Development Agreement and appeared before the Court on the merits; (3) Courage had a valid cause of action which it received by assignment from ISI–Dentsu; (4) there was no binding arbitration agreement pertaining to the disputes resolved by the Japanese judgment; (5) Japan was not a seriously inconvenient forum for ChemShare because it consented to jurisdiction; and (6) Courage complied with all procedural requirements because the English translation of the original Japanese judgment, together with the judgment, constituted an official document of the Tokyo District Court that requires no further authentication.

In its response brief, ChemShare conceded that Courage's sixth issue had been rendered moot by the district court's finding that Courage had filed a properly authenticated copy of the Japanese judgment, along with an English translation of the judgment and the apostil, and its order directing the court clerk to supplement the clerk's record on appeal with the documents. We will therefore proceed to the remaining issues.

### 1. The UFCMJRA

■ The UFCMJRA governs the recognition of foreign country money judgments. TEX. CIV. PRAC. & REM.CODE ANN. § 36.001–.008 (Vernon 1997). When recognition is not contested or a contest is overruled, a foreign country judgment is conclusive between the parties to the extent that it grants recovery or denial of a sum of money. *Reading & Bates Constr.*

*Co. v. Baker Energy Res. Corp.,* 976 S.W.2d 702, 706 (Tex.App.-Houston [1st Dist.] 1998, pet. denied). It is enforceable in the same manner as a judgment of a sister state entitled to full faith and credit. *Id.*

■ Section 36.005 sets forth three mandatory and seven discretionary grounds for nonrecognition of a foreign country judgment; these are the only defenses available to a judgment debtor. *Dart v. Balaam,* 953 S.W.2d 478, 480 (Tex. App.-Fort Worth 1997, no writ); TEX. CIV. PRAC. & REM.CODE ANN. § 36.005. In the district court, ChemShare raised the following two mandatory grounds in support of its motion for nonrecognition:

(a) A foreign country judgment is not conclusive if:

(1) the judgment was rendered under a system that does not provide impartial tribunals or procedures compatible with the requirements of due process of law;

(2) the foreign country court did not have personal jurisdiction over the defendant.

*Id.* § 36.005(a)(1), (2).

ChemShare also raised three discretionary grounds:

(b) A foreign country judgment need not be recognized if:

(3) the cause of action on which the judgment is based is repugnant to the public policy of this state;

(5) the proceeding in the foreign country court was contrary to an agreement between the parties under which the dispute in question was to be settled otherwise than by proceedings in that court;

(6) in the case of jurisdiction based only on personal service, the foreign country court was a seriously

inconvenient forum for the trial of the action.

*Id.* § 36.005(b)(3), (5), and (6).

 The party seeking to avoid recognition has the burden of proving a ground for nonrecognition. *Dart,* 953 S.W.2d at 480; *Southwest Livestock and Trucking Co., Inc. v. Ramon,* 169 F.3d 317, 320 (5th Cir.1999). Unless the judgment debtor satisfies his burden of proof by establishing one or more of the specific grounds for nonrecognition, the court is required to recognize the foreign country judgment. *Dart,* 953 S.W.2d at 480. A judgment debtor is precluded from collaterally attacking a foreign judgment when an issue was litigated before a foreign court or the party was given the opportunity to litigate the issue before that court. *Id.* Grounds for nonrecognition may be waived if a party had the right to assert that ground as an objection or defense in the foreign country court but failed to do so. *Id.*

 We review a trial court's ruling on recognition of a foreign country judgment de novo. *Reading & Bates Constr. Co.,* 976 S.W.2d at 708. Notwithstanding the reasons stated by the trial court in its findings and conclusions, we will uphold the district court's order on any ground which is supported by the record. *See In re Stevens,* 971 S.W.2d 757, 760 (Tex.App.Beaumont 1998, orig. proceeding).

On appeal, Courage has challenged each of the grounds urged by ChemShare in the district court, but because we find that the judgment may be affirmed on the ground that the parties had agreed to arbitration, we do not address the remaining issues.

**2. The Parties Agreed to Arbitration**

 In Courage's fourth issue, it attacks the district court's determination that the Japanese judgment was not entitled to recognition because the proceeding in the Japanese court was contrary to an agreement between ChemShare and ISI–Dentsu under which disputes were to be resolved by arbitration. *See* Tex. Civ. Prac. & Rem.Code Ann. § 36.005(b)(5). Courage argues that, under the Development Agreement, ChemShare irrevocably agreed to submit to the jurisdiction of the Tokyo District Court. Courage maintains that the Distribution Agreement did not alter this agreement, because the Distribution Agreement did not supersede the Development Agreement in time or subject matter, and because the Distribution Agreement was terminated by the parties before ISI–Dentsu assigned its rights to Courage. Additionally, Courage argues, ChemShare waived any right to arbitration because it did not raise it in the Tokyo District Court.[5]

**a. *The Development and Distribution Agreements must be construed together.***

 We first turn to the substance of Courage's argument that the trial court

---

5. Courage also asserts that ChemShare waived any right to arbitration by filing a lawsuit against Courage in another district court of Harris County, Texas in 1998. ChemShare objects to this assertion on the grounds that the issue is outside the scope of the appeal because ChemShare's petition was not part of the appellate record. ChemShare urges that the copy of the petition attached to Courage's brief be stricken. *See, e.g., Perry v. Kroger Stores, Store No. 119,* 741 S.W.2d 533, 534 (Tex.App.Dallas 1987, no writ) (stating that the attachment of documents as exhibits or appendices to briefs is not formal inclusion in the record on appeal and, therefore, the documents cannot be considered). Moreover, Courage does not direct us to any place in the record to support its waiver argument, and the record contains no transcription of oral argument. Therefore, Courage has waived this unsupported contention. Tex.R.App. P. 38.1(h).

erred in granting the motion for nonrecognition because there was no arbitration agreement between the parties with respect to the subject matter of the Japanese litigation. Courage relies upon the language in the Development Agreement providing that ChemShare agreed to submit to the non-exclusive jurisdiction of the Tokyo District Court "in relation to any claim, dispute or difference which may arise under this Agreement." In order to accept Courage's premise, we are required to view the Development Agreement in a vacuum, unaffected by the subsequent Distribution Agreement. A review of the documents and the applicable law, however, compels the opposite conclusion.

The parties entered into the Development Agreement in November 1991, while negotiations were continuing for a new distributor agreement. Under the Development Agreement, ChemShare agreed to enhance and develop its DesignMASTER software products in accordance with ISI–Dentsu's specifications. In exchange, ISI–Dentsu agreed to make advance payments on royalties that would be due ChemShare under the new distributor agreement. The Development Agreement provided that it was governed by and construed in accordance with the laws of Japan; additionally, ChemShare agreed to submit to the non-exclusive jurisdiction of the Tokyo District Court "in relation to any claim, dispute or difference which may arise under this Agreement."

Seven months later, in June 1992, ChemShare and ISI–Dentsu entered into the contemplated Distribution Agreement. The Distribution Agreement set out the terms and conditions governing the relationship between Chemshare as supplier and ISI–Dentsu as exclusive distributor of ChemShare's software products, including DesignMASTER.

In contrast to the choice of law and forum selection clauses in the Development Agreement, the Distribution Agreement provided that it would be governed by the laws of Texas "except where specific provisions which conflict with these are made under the terms of this Agreement." The Distribution Agreement also provided that "any dispute or difference arising out of or relating to this Agreement shall, unless settled by mutual consultation in good faith, be conclusively settled by arbitration...." The arbitration provision specified that in the event ChemShare initiates a dispute, the location of the arbitration shall be Tokyo, Japan, and if ISI–Dentsu initiates arbitration, the location shall be in Houston. In either event, the arbitration shall be conducted in the English language and "the construction of the Agreement shall be governed by the laws of the State of Texas."

We now turn to Courage's substantive arguments. Courage contends that the trial court erred in finding that the parties agreed to resolve their disputes in arbitration, because the Distribution Agreement did not supersede the Development Agreement in time or by subject matter, and because the Distribution Agreement was terminated by the parties before the assignment to Courage and the subsequent court proceeding. In response, Chem-Share argues that the Development Agreement and the Distribution Agreement must be construed together to give full effect to the parties' intentions. Chem-Share does not argue that the Distribution Agreement revoked the Development Agreement in its entirety; rather, it contends that the Distribution Agreement modified, changed, or rescinded certain terms and provisions of the Development Agreement. With regard to the conflicting choice of forum provisions, ChemShare contends that the arbitration provision of

the later-executed Distribution Agreement controls.

It is well established that instruments pertaining to the same transaction may be read together to ascertain the parties' intent, even if the parties executed the instruments at different times and the instruments do not expressly refer to each other. *Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 840 (Tex.2000); *World Help v. Leisure Lifestyles, Inc.*, 977 S.W.2d 662, 675–76 (Tex. App.-Fort Worth 1998, pet. denied). A court may determine, as a matter of law, that multiple documents comprise a written contract, and in appropriate instances, may construe all the documents as if they were part of a single, unified instrument. *Fort Worth Indep. Sch. Dist.*, 22 S.W.3d at 840.

It has been stated that a difficult question of interpretation may arise when a second contract deals with the same subject matter as the first contract made by the same parties, but does not specify whether or to what extent it is intended to operate in discharge or substitution. *Cooper v. Supercinski*, 700 S.W.2d 239, 243 (Tex.App.-Waco 1985, writ ref'd n.r.e); *Crown Western Investments, Inc. v. Mercantile Nat'l Bank at Dallas*, 504 S.W.2d 785, 789 (Tex.Civ.App.-Tyler 1974, no writ). In such a case, the two contracts must be interpreted together, and to the extent that they are inconsistent, the later one prevails. *Cooper*, 700 S.W.2d at 243; *Crown Western Investments*, 504 S.W.2d at 789. The remainder of the first contract not in conflict with the second may be enforced. *Cooper*, 700 S.W.2d at 243–44; *Crown Western Investments*, 504 S.W.2d at 789.

Here, the same parties, ISI–Dentsu and ChemShare, entered into both the Development Agreement and the Distribution Agreement. In the Distribution Agree-

ment, they agreed to forum selection and choice of law clauses that are plainly inconsistent with those of the Development Agreement. Therefore, the question becomes whether the two agreements involve the same subject matter such that they should be construed together, with the terms of the later-executed Distribution Agreement controlling over the conflicting terms of the Development Agreement, or whether the Development Agreement is more properly considered a separate agreement that is not affected by the subsequent Distributor Agreement.

The Development Agreement clearly demonstrates that ChemShare and ISI–Dentsu anticipated entering into a new Distribution Agreement that would govern the distribution of the enhanced DesignMASTER software. References to the proposed Distribution Agreement appear throughout the Development Agreement. Among other things, ChemShare and ISI–Dentsu agreed to the following:

- "All enhancements and developments made [under the Development Agreement] by ChemShare shall be deemed to be the enhancement of DesignMASTER under the Distributor Agreement, thus [ISI–Dentsu] shall be granted by ChemShare the same distribution right in Japan of the enhancements and developments of DesignMASTER as currently exist under the proposed Distributor Agreement...."

- "[ISI–Dentsu] agrees to pay to ChemShare ... as a prepayment of the portion of royalties to be remitted by [ISI Dentsu] to ChemShare under the Distributor Agreement."

- "The said prepayments shall be credited with royalties due to ChemShare for DesignMASTER under the Distributor Agreement."

- "Should ChemShare's enhancements and developments [be behind schedule], the said prepayments shall be credited with royalties due to ChemShare for all the ChemShare products licensed under the Distributor Agreement after [ISI–Dentsu] has given ChemShare a remedy period to be agreed upon by both parties . . . ."
- "In case of the termination of the disbursement of the prepayment as specified above [by ISI–Dentsu], all the prepayment made by [ISI–Dentsu] hereunder shall be credited with royalties due to ChemShare for all the ChemShare Products licensed under the Distributor Agreement after [ISI–Dentsu] has given ChemShare a remedy period to be agreed upon by both parties . . . ."
- "Should outstanding balance of prepayment made by [ISI–Dentsu] exists [sic] at the end of October, 1993, the said prepayment shall be credited with royalties due to ChemShare for all the ChemShare Products licensed under the Distributor Agreement."

A comparison of the Development Agreement with the Distribution Agreement further demonstrates their interrelated nature. Under the Distribution Agreement, ISI–Dentsu was appointed the exclusive sales and service distributor for ChemShare's products in Japan. In return for its efforts, ISI–Dentsu was entitled to a percentage of the net royalty revenue received from the sales of the products. Under the Development Agreement, ISI–Dentsu agreed to pay a portion of the costs associated with the enhancement and development of the DesignMASTER software, and such payments were to be treated as a portion of the royalties due under the Distributor Agreement.

Given the foregoing, we find that the two agreements pertain to the same subject matter—the distribution of ChemShare's products in Japan. Thus, we review them together to determine the parties' intent, and if the forum selection provisions conflict, then the provision of the later-executed Distributor Agreement will control.

Under the Development Agreement, Japanese law applied, and ChemShare irrevocably and unconditionally submitted to the non-exclusive jurisdiction of the Tokyo District Court in relation to any claim, dispute or difference *arising under the Development Agreement*, without prejudice to ISI–Dentsu's right to commence any legal action or proceeding in the courts of any other jurisdiction. However, under the Distribution Agreement, the parties agreed that, with certain exceptions, any dispute or difference *arising out of or relating to the Distribution Agreement* shall be conclusively settled by arbitration as specified. Thus, disputes arising under the Development Agreement are governed by the terms of that agreement, and disputes arising under or relating to the Distribution Agreement are governed by the terms of that agreement.

At oral argument, Courage conceded that "in a broad sense" the two agreements applied to the same subject matter. Nevertheless, Courage strenuously argued that the purpose of the two agreements differed, and that in the present case only the Development Agreement was breached, not the Distribution Agreement. Specifically, Courage argued that the Development Agreement was directed to developing the DesignMASTER product, while the Distribution Agreement was directed to the sales of the product. Because the DesignMASTER products that were developed failed and were never sold, Courage contends there were no sales under the Distribution Agreement

and ChemShare never earned the $1.2 million Courage sought to recover.

However, we do not agree with Courage's conclusion that the two agreements are separate and independent. The language of the Development Agreement makes clear that the proposed enhancements were deemed to be enhancements under the Distribution Agreement, and the royalties to be prepaid by ISI–Dentsu were royalties due ChemShare under the Distribution Agreement. There is no rational basis for viewing the two agreements in isolation, after the fact, when they are so inextricably intertwined. Moreover, Courage's own pleading in the Tokyo District Court supports our conclusion. In that pleading, Courage expressly referred to the negotiation and execution of the Distribution Agreement and alleged that, under the Development Agreement, ISI–Dentsu "would pay an aggregate amount of U.S. $1,200,000 required for the development of such new functions as a prepayment of a portion of royalties *under the Distribution Agreement*" (emphasis added). Thus, by Courage's own admission, the resolution of its claim required reference to, and reliance upon, the Distribution Agreement.

Additionally, we reject Courage's contention that the Development Agreement was not superseded by the Distribution Agreement in time because the parties specifically made the Distribution Agreement effective from April 1, 1991. Courage's argument is counterintuitive, and if anything, the fact that the parties intended the Distribution Agreement to be effective from that date bolsters the conclusion that the parties intended for the Distribution Agreement to supersede and to control to the extent that any provisions of the two agreements were inconsistent. Given that (1) the Distribution Agreement was contemplated in the Development Agreement

and was made effective prior to the Development Agreement, and (2) the breach alleged by Courage was factually intertwined with the Distribution Agreement, ChemShare's alleged breach of the Development Agreement was a breach of the commercial relationship of the parties that "related to" the Distribution Agreement and triggered its arbitration provision. In other words, the dispute was not so much about an alleged breach of the Development Agreement, but rather an alleged breach of the global agreement for the development and distribution of ChemShare's products. This conclusion is further supported by the following merger clause contained in the Distribution Agreement: "[t]he terms and conditions of this Agreement supersede those of all previous Agreements between ChemShare and the Distributor with respect to the Products." By Courage's own admission, it sought a return of prepayments for enhancements of the DesignMASTER product that it contends failed, enhancements that—under the terms of the Development Agreement—were deemed enhancements under the Distribution Agreement.

█ Finally, Courage argues that the Distribution Agreement could not supersede the Development Agreement because the Distribution Agreement was terminated. However, the Termination Agreement specifically provided that the termination of the Distribution Agreement "shall not otherwise affect any rights or obligations of the parties accrued or vested prior to termination." The purpose of the Termination Agreement was to document the termination of the business relationship between ChemShare and ISI–Dentsu. As Courage alleged in its pleading in the Toyko District Court, and as demonstrated by the record, ChemShare and ISI–Dentsu discussed the termination of the Distribution Agreement and restitution of the pre-

payments allegedly owed to ISI–Dentsu by ChemShare prior to entering into the Termination Agreement. Any claims or rights that ISI–Dentsu had against ChemShare (and assigned to Courage) accrued prior to the execution of the Termination Agreement. Therefore, by its own terms, the execution of the Termination Agreement did not extinguish those claims.[6]

Therefore, we hold the district court did not err in finding that the Japanese judgment was not entitled to recognition and enforcement because the parties had agreed to arbitrate their disputes, and nonrecognition based on section 36.005(b)(5) was proper.

**b. _ChemShare did not waive its right to assert arbitration._**

■ Having determined that the arbitration provision of the Distribution Agreement applies to the Development Agreement, we now turn to Courage's argument that ChemShare has waived the right to raise arbitration by failing to raise it in the Japanese proceeding. ChemShare responds to this argument by asserting that it appeared pro se in the Japanese proceeding for the limited purpose of contesting jurisdiction, challenging Courage's standing, and asserting forum non conveniens grounds. ChemShare contends that it did not attempt to defend on the merits because that may have subjected it to the jurisdiction of the Japanese court. Further, ChemShare argues, in Texas, the assertion of an arbitration provision is an affirmative defense that may subject a party to the jurisdiction of the court. We agree that ChemShare did not waive the right to arbitrate by failing to raise it in the Japanese forum.

To accept Courage's waiver argument, we must first agree that ChemShare actually litigated or was given the opportunity to litigate the issue in the Japanese proceeding. _See Dart_, 953 S.W.2d at 480. Courage contends that, in addition to asserting its jurisdictional defense, ChemShare addressed the substantive merits of the case by filing its motion for continuance and a detailed _tobensho_, or reply, contesting Courage's claims on both procedural and substantive grounds. In support of this assertion, Courage relies upon the affidavit of Satoshi Ogishi, in which Ogishi, a licensed Japanese lawyer, stated that ChemShare contested Courage's claims on both jurisdictional and substantive grounds, and that the _tobensho_ was in Japanese, in proper Japanese legal form, and contained citations to Japanese law. Ogishi also opined that the _tobensho_ did not contain any "jurisdictional defense" that the dispute was subject to mandatory arbitration, and that such a defense "was fully available for Defendants to assert" in the Japanese proceeding. Courage cites no Japanese authority in support of its waiver argument.

We have previously determined that the Distribution Agreement applies to the dispute between Courage and ChemShare over the royalty prepayments. Under the Distribution Agreement's arbitration provision, "[i]n the event that [ISI–Dentsu] initiates a dispute, the location of the arbitration shall be Houston in the English language." Moreover, the parties' agreement was governed by Texas law. Nevertheless, Courage, as assignee of ISI–Dentsu, initiated a lawsuit in Tokyo rather than arbitration in Houston in contravention of the parties' agreement. We must therefore consider whether ChemShare's failure

6. We also note that ISI–Dentsu assigned to Courage its "rights and claims under or related to" the Development Agreement "together with all other agreements with ChemShare related or collateral thereto."

to raise arbitration in response to that lawsuit waived its right to assert the arbitration agreement as a ground for nonrecognition of the Tokyo District Court's judgment.

 Under Texas law, the right to arbitrate, like any other contractual right, may be waived. *Transwestern Pipeline Co. v. Horizon Oil & Gas Co.*, 809 S.W.2d 589, 592 (Tex.App.-Dallas 1991, writ dism'd w.o.j.); *Home Club, Inc. v. Barlow*, 818 S.W.2d 192, 193 (Tex.App.-San Antonio 1991, no writ). Whether a party has waived its right to compel arbitration is a question of law subject to de novo review. *In re Bruce Terminix Co.*, 988 S.W.2d 702, 704 (Tex.1998); *Transwestern Pipeline*, 809 S.W.2d at 592. A presumption exists against waiver of arbitration. *Id.* Waiver will be found when the party seeking arbitration substantially invokes the judicial process to the detriment or prejudice of the other party. *Home Club*, 818 S.W.2d at 193 (citing *USX Corp. v. West*, 759 S.W.2d 764, 767 (Tex.App.-Houston [1st Dist.] 1988, orig. proceeding [leave denied] )). Mere delay in making an arbitration demand does not constitute waiver; it is only when this delay results in actual prejudice that it may amount to a waiver. *Id.* In addition, the waiver of an arbitration right must be intentional. *EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 89 (Tex.1996).

Thus, for example, in *Home Club*, the court found that the parties seeking arbitration did not waive the right to assert arbitration when they filed special appearances and then, when the special appearances were overruled or conceded, filed answers, responded to interrogatories, and did not file a motion to stay the case pending arbitration for several months. *Id.* at 193. In reaching its decision, the *Home Club* court noted that the parties had not taken advantage of the judicial process, but had merely taken defensive

actions by contesting jurisdiction and seeking to set aside default judgments. *Id.* Similarly, in *Transwestern*, the court rejected the argument that Transwestern Pipeline had waived the right to arbitration when it failed to invoke the arbitration clause in its answer or prior to its filing, or before the setting of an initial trial date. *Transwestern*, 809 S.W.2d at 593. Further, the trial court held that the filing of a general denial to prevent entry of a default judgment in and of itself was insufficient to deny Transwestern the right to later seek to compel arbitration. *Id.*

In its reply to Courage's lawsuit, ChemShare presented its jurisdictional arguments, and moved for dismissal and costs, under a section entitled "Claims Prior to the Merits." Under the second section, "Claims Based on the Merits," ChemShare again moved for dismissal and costs, and presented the following argument:

> Pending more detailed arguments regarding the substantive causes of action in this case that Defendants will make, if necessary, after the court hands down its ruling regarding the issues prior to the merits, Defendants categorically contest all claims made by plaintiff, including that Defendants have any obligation to return the deposit moneys in question or that Winsim has any obligation to pay any damages in this case.

It is evident that ChemShare was making its claims on the merits *subject to* the court's ruling on its jurisdictional objections. Further, the Tokyo District Court's judgment does not reflect that ChemShare made any arguments on the merits, and it is undisputed that ChemShare did not appear and defend after it entered its reply. This case is thus distinguishable from *Dart*, in which the court found that the appellant had waived his right to assert an agreement to arbitrate as a ground for

non-recognition of an Australian judgment. *See Dart,* 953 S.W.2d at 482. In *Dart,* the appellant had made an unconditional appearance and filed a counterclaim seeking affirmative relief in the Australian court. *Id.* In the present case, ChemShare did not waive its jurisdictional arguments or seek affirmative relief in the Tokyo District Court. Moreover, there is no finding by the Tokyo District Court that Chem-Share waived its jurisdictional arguments, nor did Courage's legal expert, Satoshi Ogishi, opine in his affidavit that Chem-Share waived its jurisdictional objections. Indeed, ChemShare's filings in the Tokyo District Court were on behalf of itself and Winsim, Inc., and Winsim was ultimately dismissed for lack of jurisdiction. It is implicit in the Tokyo District Court's dismissal of Winsim that its (and Chem-Share's) jurisdictional objections were not waived.[7]

We hold that, given these circumstances, ChemShare's reply filed in the Tokyo District Court did not waive its right to assert arbitration under Texas law. Chem-Share's jurisdictional argument was made prior to any response on the merits. Further, the substantive reply was made expressly subject to the jurisdictional defense and the Tokyo District Court's ruling on its defenses, and at no time did Chem-Share take advantage of the Japanese judicial process. Accordingly, we do not find that ChemShare substantially invoked the judicial process to the detriment or prejudice of Courage such that it should be barred from asserting its right to arbitration; nor do we find that Courage was actually prejudiced by any delay on the part of ChemShare. Indeed, Courage has

neither argued nor demonstrated that it was prejudiced by any delay here. Therefore, we hold that ChemShare did not waive its defense of arbitration because it did not actually litigate the issue before the Tokyo District Court or forego the opportunity to do so.

## HOLDING

We hold the trial court did not err in determining that the Japanese judgment was not entitled to recognition under Texas Civil Practice and Remedies Code section 36.005(b)(5) on the grounds that the parties had agreed to arbitration of their disputes. Accordingly, we affirm the judgment of the trial court.

EDELMAN, J. dissenting.

The dissenting opinion issued in this case on August 22, 2002, is withdrawn, and the following dissenting opinion is issued in its place.

The majority opinion essentially holds that a foreign judgment can be denied recognition on the ground that the foreign proceeding was contrary to an agreement to settle the dispute other than by proceedings in the foreign court[1] even though that court was never apprised of any such agreement. I disagree with this conclusion for two reasons.

First, I believe it is contrary to the rule that a judgment debtor may not rely on a ground for nonrecognition of a foreign judgment that the party had a right, but failed, to assert in the foreign proceeding.[2] Second, and similarly, a party with a right to arbitration has a choice whether to invoke it and may see an advantage in re-

---

7. For the same reasons, we reject any assertion that ChemShare's initial effort to seek a continuance from the Tokyo District Court constituted a general or unconditional appearance.

1. *See* Tex. Civ. Prac. & Rem.Code Ann. § 36.005(b)(5) (Vernon 1997).

2. *See Dart v. Balaam,* 953 S.W.2d 478, 480 (Tex.App.-Fort Worth 1997, no writ).

fraining from doing so in a particular case. Where, as here, a party has failed to invoke its claim to arbitration in a foreign proceeding,[3] I do not think it can be said that the resulting foreign judgment is *contrary* to an agreement to settle the dispute by arbitration when that court never had a chance to let the dispute be settled in accordance with the agreement.

If the majority holding is correct, a party with an arguable claim to arbitration would be well advised to refrain from raising it in a foreign lawsuit so as to assure that any adverse foreign judgment would not be recognized in a United States court. Because I do not believe this is supported by law or logic, I would not affirm the trial court's denial of recognition of the Japanese judgment on the ground that the Japanese proceeding was contrary to the parties' agreement to arbitrate.

---

**3.** In this case, whether ChemShare's failure to urge its right to arbitration in the Japanese proceeding would constitute a "waiver" of that right under the Texas case law cited in the majority opinion is academic. The fact remains that whatever opportunity ChemShare had to assert its arbitration claim in the Japanese court is now gone, and the circumstances set forth in the majority opinion show no other reason for ChemShare's loss of its arbitration claim than a failure to invoke it (*i.e.*, along with the other defensive matters it asserted subject to its jurisdictional challenge).