# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00525-CV

**Mariana Teixeira Naves, Appellant**

**v.**

**National Western Life Insurance Company, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT
### NO. D-1-GN-07-004494, HONORABLE SCOTT H. JENKINS, JUDGE PRESIDING

## C O N C U R R I N G   O P I N I O N

Mariana Teixeira Naves appeals the district court's judgment granting appellee National Western Life Insurance Company's ("National Western") motion for nonrecognition of a foreign money judgment that Naves obtained against National Western in a civil court in Brazil. Naves contends that the district court erred by ruling that the Brazilian judgment has no force and effect in any Texas court and that it is not entitled to full faith and credit pursuant to the Uniform Foreign Country Money-Judgment Recognition Act.[1] In the alternative, Naves contends the district court erred by granting National Western's motion for nonrecognition without conducting an evidentiary hearing. Because the majority fails to address issues that, in my view, are necessary to the proper disposition of this appeal, I respectfully concur in the judgment only.

---

[1] *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 36.001-.008 (West 2008) (the "Act").

# BACKGROUND

The underlying dispute concerns a life insurance policy that National Western issued in Brazil in 2002 in the face amount of $400,000. Antonio Rodrigues was the insured; Naves was the policy's beneficiary; and Ricardo Tarantello submitted the application for the insurance policy to National Western for issuance. Beginning in 2001, Tarantello was authorized to procure insurance applications in Brazil for National Western pursuant to a written agreement—the "Executive General Agent Contract"—in which National Western authorized Tarantello to "procure applications for insurance and annuity contracts" on a non-exclusive basis. Two months after National Western issued the policy and during the contestability period, Rodrigues was shot and killed in Brazil.

After National Western denied coverage and refused to pay the face amount of the policy, Naves brought suit in a Brazilian court against Tarantello and National Western to recover the policy proceeds. Naves attempted to serve National Western by serving Tarantello in Brazil with a "summons." Tarantello appeared in the suit, but moved for "annulment of the summons" on National Western because he was not authorized to represent National Western. Despite Tarantello's position, the Brazilian court found that the summons was valid on National Western "by means of the co-defendant [Tarantello]." The Brazilian court entered a default judgment against National Western in the amount of R$ 1,169,120.00[2] plus other costs and fees.

Naves thereafter filed a notice of domestication of a foreign judgment with a copy of the Brazilian judgment and an English translation of the judgment in the district court of Travis

---

[2] The judgment was rendered in Brazilian currency.

2

County.[3] National Western responded, filing a motion for nonrecognition of the foreign judgment. Among its grounds, National Western challenged the Brazilian court's personal jurisdiction over National Western, contending that Tarantello was not authorized to accept service of process on behalf of National Western. In support of its motion, National Western filed an affidavit from James Payne, a senior vice-president of National Western, and an expert affidavit on Brazilian law from Antonio Gidi, an assistant professor of law.

Naves filed a response to the motion with attached evidence, including the jury findings from a lawsuit in Harris County on a separate life insurance policy issued by National Western on Rodrigues's life.[4] As part of her response, Naves objected to portions of Payne's affidavit, contending that the statements were conclusory and conclusions of law by a non-expert. National Western filed a reply to the response, and Naves filed a supplemental response and a sur-reply, with a revised translation of the Brazilian judgment and excerpts of trial testimony of

---

[3] Naves initially filed the notice of domestication in Harris County district court, but the case was transferred to Travis County district court.

[4] National Western issued a separate life insurance policy for Antonio Rodrigues in the face amount of $150,000. This policy named Rosemary Sanches as the beneficiary and is the subject of the lawsuit in Harris County. Naves relies on the jury's findings, including that National Western failed to comply with its policy by not paying Sanches the policy amount upon Rodrigues's death, to support Naves's underlying claim against National Western for failure to pay insurance proceeds. Pending before this Court is National Western's motion to strike and disregard references to jury findings and the judgment rendered in the Harris County case. I would deny National Western's motion to strike, but note that the substantive issues of the underlying claim are not at issue in the determination of whether or not to recognize a foreign country money-judgment pursuant to the Act. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 36.0044(g), 36.005; *Reading & Bates Constr. Co. v. Baker Energy Res. Corp.*, 976 S.W.2d 702, 706 (Tex. App.—Houston [1st Dist.] 1998, pet. denied); *Dart v. Balaam*, 953 S.W.2d 478, 480 (Tex. App.—Fort Worth 1997, no writ).

3

Scott Arendale, National Western's senior vice-president of international marketing, from the Harris County trial concerning the separate life insurance policy.

The district court held a hearing on National Western's motion for nonrecognition of the foreign judgment on July 14, 2008.[5] The district court granted the motion, stating in its order:

> Defendant's Motion for Nonrecognition of Foreign Judgment is hereby GRANTED and the August 23, 2005 judgment of the 38th Central Civil Court in Case File 008.990-08/04, a translation of which has also been filed by Mariana T. Naves in this case[,] shall be of no force and effect in any Texas court and is NOT entitled to full faith and credit pursuant to Texas Civil Practice & Remedies Code Chapter 36. All other relief not granted in this Final Order is denied.

The district court stated that it considered National Western's motion and the evidence attached to the motion, Naves's response and the evidence attached to the response, and other pleadings on file in the case on July 14, 2008. Naves moved for reconsideration, attaching additional evidence to her motion.[6] Naves also filed a request for findings of fact and conclusions of law, but she did not file a notice of past due findings of fact and conclusions of law. *See* Tex. R. Civ. P. 297. No findings of fact and conclusions of law were filed. After the motion for reconsideration was overruled by operation of law, this appeal followed.

---

[5] A few days before the hearing, National Western also filed a motion for leave to file an affidavit from Tarantello, attaching the affidavit to its motion. *See* Tex. Civ. Prac. & Rem. Code Ann. § 36.0044(f).

[6] The evidence attached to the motion for reconsideration included additional excerpts from trial testimony of Scott Arendale, National Western's "Form 10-K" filed with the United States Securities and Exchange Commission, and the jury verdict in the re-trial of the Harris county lawsuit involving the separate insurance policy issued by National Western on Rodrigues's life.

4

**ANALYSIS**

Naves raises five issues on appeal. In her first four issues, Naves contends that the district court erred in granting National Western's motion for nonrecognition because the Brazilian court rendered its judgment in accordance with due process of law, the Brazilian court had personal jurisdiction over National Western, the Brazilian judgment is entitled to full faith and credit, and Brazil and the United States have reciprocity in the enforcement of each other's judgments. In her fifth issue, she contends, in the alternative, that an evidentiary hearing should have been required.

***Standard of Review***

In an appeal from a trial court's order granting a motion for nonrecognition, we review *de novo* the legal question of whether the trial court should have recognized the foreign judgment. *See Courage Co. v. Chemshare Corp.*, 93 S.W.3d 323, 331 (Tex. App.—Houston [14th Dist.] 2002, no pet.). A trial court may also resolve questions of fact before reaching a legal question. *See BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). When a trial court makes a ruling without delineating findings of fact and conclusions of law, we imply all facts necessary in favor of the ruling, if they are supported by the record. *See id*. at 795. The trial court's ruling must be affirmed if it can be upheld on any legal theory that finds support in the evidence. *See Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990).

The law of Brazil is at issue in this appeal. The determination of the law of a foreign country is subject to review as a question of law. Tex. R. Evid. 203; *Reading & Bates Constr. Co. v. Baker Energy Res. Corp.*, 976 S.W.2d 702, 707 (Tex. App.—Houston [1st Dist.] 1998, pet. denied).

5

*Recognition of Foreign Judgments*

Chapter 36 of the civil practice and remedies code governs the recognition of foreign country money judgments. Tex. Civ. Prac. & Rem. Code Ann. §§ 36.001-.008 (West 2008) (the "Act"). Section 36.0044(g) requires Texas courts to recognize foreign country money judgments unless one of the specified grounds in section 36.005 applies. *Id*. § 36.0044(g).[7] Section 36.005 provides three mandatory and seven discretionary grounds for nonrecognition. *Id*. § 36.005. The party seeking to avoid recognition of a foreign judgment has the burden to prove a ground for nonrecognition. *Courage Co.*, 93 S.W.3d at 331.

In its motion for nonrecognition, National Western raised the following two mandatory grounds in section 36.005(a):

(a)     A foreign country judgment is not conclusive if:

   (1)     the judgment was rendered under a system that does not provide impartial tribunals or procedures compatible with the requirements of due process of law;

   (2)     the foreign country court did not have personal jurisdiction over the defendant; . . . .

---

[7] Section 36.0044(g) reads:

The court may refuse recognition of the foreign country judgment if the motions, affidavits, briefs, and other evidence before it establish grounds for nonrecognition as specified in Section 36.005, but the court may not, under any circumstances, review the foreign country judgment in relation to any matter not specified in Section 36.005.

Tex. Civ. Prac. & Rem. Code Ann. § 36.0044(g).

Tex. Civ. Prac. & Rem. Code Ann. § 36.005(a)(1)-(2). National Western also raised one discretionary ground in section 36.005(b):

> (b)    A foreign country judgment need not be recognized if: . . .
>
> > (7)    it is established that the foreign country in which the judgment was rendered does not recognize judgments rendered in this state that, but for the fact that they are rendered in this state, conform to the definition of "foreign country judgment."

*See id*. § 36.005(b)(7). I would conclude that the judgment may be affirmed on the ground that the Brazilian court did not have personal jurisdiction over National Western.

### *Personal Jurisdiction*

The parties agree that Brazilian law required Naves to serve National Western with the summons in order for the Brazilian court to obtain personal jurisdiction over National Western. The issue then is whether Naves complied with an applicable method for service of process. The parties also agree that, under Article 12, Subsection VIII, of the Brazilian code of civil procedure, a foreign corporation may be served by serving a certain class of individuals in Brazil if the foreign corporation has a branch office or agency in Brazil. It is this method for serving a foreign corporation that the Brazilian court found applicable in concluding that it had personal jurisdiction over National Western.

Naves relies on the Brazilian court's specific findings in its judgment to support that Naves's service on Tarantello was effective service on National Western because the Brazilian court is "the best interpreter of Brazilian law." The Brazilian court found Tarantello to be National

7

Western's "commercial representative," and relied on Article 12, subsection VIII, of the Brazilian code of civil procedure, to conclude that the summons issued to National Western was "lawful and regular":

> In this case we consider applicable the text of article 12, subsection VIII, of the Code of Civil Procedures:
>
> > Article 12 - Will be represented, actively and passively in a court of law:
> >
> > VIII - the foreign corporation, by the manager, representative or administrator of the branch office, agency or field office opened or established in Brazil.[8]

Naves also relies on the contract between Tarantello and National Western to contend that Tarantello fell within the class of individuals authorized to accept service on behalf of National Western under Article 12, subsection VIII. Naves contends that, because National Western failed to provide Brazilian law on what constitutes a "manager, agent or officer" of "a branch office, agency or representation office" under Brazilian law, the law of Texas applies and, under Texas law, Tarantello was "an agent." *See PennWell Corp. v. Ken Assocs., Inc.*, 123 S.W.3d 756, 761

---

[8] The revised translation of the Brazilian judgment that Naves filed provides that Tarantello was National Western's "business agent," and translates Article 12 to read:

> Therefore, the provision under article 12 (VIII) of the Code of Civil Procedure applies.
>
> > Art. 12 - The following shall be represented in court as creditor or debtor:
> >
> > VIII - foreign legal entities, by the manager, agent or officer of their branch office, agency or representation office opened or established in Brazil.

Any differences in the two translations are not material.

8

(Tex. App.—Houston [14th Dist.] 2003, pet. denied) (failure to provide adequate proof of foreign law results in presumption that the law of the foreign jurisdiction is identical to Texas law).

National Western counters that Article 12, subsection VIII, of the Brazilian code of civil procedure did not apply and that Naves had a method available under Brazilian law to serve a foreign corporation that did not have a branch office or agency in Brazil, but she chose not to pursue service pursuant to this method. National Western relies on the affidavits of James Payne and Antonio Gidi to contend that it established the applicable law of Brazil, that it did not have a branch office or agency in Brazil, that Tarentello was not its agent for service of process, and that Texas law did not apply.

A proper analysis begins by determining the applicable law. *See* Tex. R. Evid. 203 (to determine foreign law, court "may consider any material or source, whether or not submitted by a party or admissible under the rules of evidence including but not limited to affidavits, testimony, briefs, and treatises"); *Reading & Bates Constr. Co.*, 976 S.W.2d at 707. Gidi averred concerning methods of service of process on foreign corporations under Brazilian law. He averred that he teaches civil procedure in both the United States and Brazil; that he has published papers on civil procedure in both English and Portuguese; and that he "consulted" the default Brazilian judgment, Payne's affidavit, and "several Brazilian statutes, cases, and scholarship" in forming his opinions. He averred in paragraphs 5 through 10 and paragraphs 13 and 14 of his affidavit that the Brazilian court did not have jurisdiction over National Western because Naves did not obtain service of process on National Western:

9

5. The issue before us is only whether service of process was validly performed to [National Western] under Brazilian law. The response is negative. Texas courts should not recognize the Brazilian judgment because it violates the due process clause of the Brazilian Constitution. In U.S. legal terminology, the Brazilian courts never acquired jurisdiction over the defendant.

6. Brazilian law requires valid service of process on the defendant as a condition to the validity or existence of court proceedings. Lack of service of process is a violation of the due process clause of the Brazilian Constitution (Constitution, art. 5th, LIV).

7. Foreign corporations that have opened or incorporated branches or agencies in Brazil may be represented in court through the manager, representative or administrator of such units (CPC, art.12, VIII). According to CPC, art. 12, 3rd §: The branch or agency [ ] manager is presumed authorized, by the foreign corporation, to receive service of process.

8. Foreign legal persons that have not opened or incorporated branches in Brazil, such as [National Western], are disciplined by the general rule in CPC, art. 12, VI and must receive notice and be represented in court by the persons designated in their bylaws or, in the absence of designation, by their directors.

9. The Brazilian court erred in its interpretation of CPC, art. 12, VIII in considering that service of process on an independent contractor was valid service on [National Western]. The independent contractor was not authorized to accept service of process on [National Western]'s behalf, [ ] and art. 12, VIII is not applicable in this case because the person who received service of process is not a manager of a branch or agency opened or incorporated in Brazil.

10. Service of process on a foreign defendant may be performed through rogatory letter. According with CPC, art. 210, rogatory letters must follow international conventions.

* * *

13. The devices stated above (CPC, art. 12, VI; CPC, art. 12, VIII and rogatory letters) are the only methods by which Naves could have validly and legally served [National Western] with process.

10

14. Because Brazilian law requires valid service of process as a condition to the validity of court proceedings and because Naves did not properly serve [National Western] with process, the Brazilian judgment violates the due process clause of the Brazilian Constitution.

Attached to Gidi's affidavit was a copy of his resume and the applicable Brazilian procedural rules in Portuguese with his English translation of those rules.[9] Naves did not challenge Gidi's qualification as an expert on Brazilian law or his translation and did not provide an expert affidavit on Brazilian law. I would conclude that Gidi's affidavit with a copy of the applicable Brazilian law is sufficient to determine and apply the law of Brazil concerning methods of service on foreign

---

[9] Gidi's translation of "Brazilian Procedural Rules" reads:

Constitution, art. 5th, LIV: No person shall be deprived of his or her liberty or property without due process of law.

CPC, Art. 12, VI: Legal persons (corporations) will be represented in court, either as plaintiff or defendant, by the persons designated in their bylaws, or in the absence of designation, by their directors.

CPC, Art. 12, VIII: Foreign legal persons (foreign corporations) will be represented in court, either as plaintiff or defendant, by the manager, representative or administrator of its branch or agency, open or incorporated in Brazil.

CPC, Art. 12, 3rd §: The manager of the branch or agency is presumed authorized, by the foreign corporation, to receive service of process.

CPC, art. 210: Rogatory letters must follow international convention, regarding admissibility and compliance. In the absence of international convention, rogatory letters will be sent to the foreign judicial authority through diplomatic means, after translated into the language of the country in which the act is to be performed.

11

corporations in Brazil. *See* Tex. R. Evid. 203.[10] I turn then to a review of the evidence to determine if serving Tarantello was effective service on National Western pursuant to Brazilian law.

To support that serving Tarantello complied with article 12, subsection VIII, Naves contends that National Western failed to establish either that it did not have a "branch office or agency" in Brazil or that Tarantello was not an individual of the branch office or agency authorized to accept service. *See* Tex. Civ. Prac. & Rem. Code Ann. § 36.0044(g). Naves relies on evidence that the district court did not consider in its ruling, including Tarantello's affidavit that National Western filed a few days before the July 14, 2008, hearing with a motion for leave and National Western's "Form 10-K" that was attached to Naves's motion for reconsideration.[11] The district court states in its order that it considered National Western's motion and "the evidence attached" to that

---

[10] In an analogous argument to her argument that Texas law should determine whether Naves obtained service of process on National Western, Naves contends that her method of serving National Western was "proper under the rules of the state." Section 36.006(b) of the Act provides that a "court of this state may recognize other bases of jurisdiction." Tex. Civ. Prac. & Rem. Code Ann. § 36.006(b). Because it is within the trial court's discretion whether to recognize "other bases of jurisdiction," this Court reviews this determination for an abuse of discretion. *See* Tex. Gov't Code Ann. § 311.016(1) (West 2005) ("'May' creates discretionary authority or grants permission or a power."); *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985) (standard for abuse of discretion). Naves had a method available under Brazilian law for serving National Western, but she chose not to pursue it. Naves states that she "could have spent additional time, money and energy to serve National Western through a treaty, but there was no need or requirement to do so." Gidi similarly averred that Naves could have utilized rogatory letters to obtain service on National Western. Even if Tarantello was authorized to accept service on National Western's behalf pursuant to "the rules of the state," I would conclude that the decision not to recognize "other bases for jurisdiction" was not an abuse of discretion. *See* Tex. Civ. Prac. & Rem. Code Ann. § 36.006(b); *Downer*, 701 S.W.2d at 241-42.

[11] Naves relies on Tarantello's affidavit for what he did not say and to show that he was under the control of National Western, and she relies on National Western's Form 10-K to show the volume of National Western's business in Brazil. Naves also relies upon excerpts from the trial testimony of Scott Arendale in which he confirmed that National Western generates its business in a country like Brazil through "an agent" like Tarantello.

12

motion, the response to the motion and the "evidence attached" to that response, and "other pleadings on file in the case on July 14, 2008," the day of the hearing. Because it is within the trial court's discretion whether to allow a party to file additional evidence, the issue is whether the trial court abused its discretion by limiting the evidence that it reviewed to the evidence attached to the motion and response. *See* Tex. Civ. Prac. & Rem. Code Ann. § 36.0044[12]; *see also* Tex. Gov't Code Ann. § 311.016(1) (West 2005); *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985).

Naves does not contend that the additional evidence upon which she relies, including Tarantello's affidavit and National Western's Form 10-K, was filed within the Act's deadlines or that the evidence was not available for filing within the deadlines. *See* Tex. Civ. Prac. & Rem. Code Ann. § 36.0044. She also has not attempted to show that good cause existed for filing the evidence

---

[12] Section 36.0044 of the Act provides the deadlines for filing "supporting affidavits, briefs, and other documentation." *See* Tex. Civ. Prac. & Rem. Code Ann. § 36.0044. The party filing the motion for nonrecognition must file the motion with supporting documentation within 30 days after it is served with the notice of filing for domestication of the foreign judgment. *See id.* § 36.0044(a). The responding party has 20 days from the date of service of a copy of the motion to file its response with supporting documents. *See id.* § 36.0044(c). The court also may allow the parties to file additional documents under subsections (d) and (f):

> (d) The court may, on motion and notice, grant an extension of time, not to exceed 20 days unless good cause is shown, for the filing of a response or any document that is required to establish a ground for nonrecognition but that is not available within the time for filing the document. . . .

> (f) The court may at any time permit or require the submission of argument, authorities, or supporting material in addition to that provided for by this section.

*Id.* § 36.0044(d), (f).

13

after the deadline. On this record, I would conclude that the district court did not abuse its discretion by considering only the evidence attached to National Western's motion and Naves's response and would limit my review accordingly to that evidence. *See id.* I review the evidence that supports a finding that National Western did not have a branch office or agency in Brazil, concluding that it is dispositive and supports the district court's conclusion. *See BMC Software Belgium*, 83 S.W.3d at 795; *Worford*, 801 S.W.2d at 109.[13]

Payne's affidavit, attached to National Western's motion, was among the evidence before the district court. Payne averred that he was "Senior Vice-President-Secretary" of National Western and that he had personal knowledge of the matters stated in his affidavit. He averred that National Western is a Colorado corporation with its principal office in Austin, Texas, that National Western was not registered to do business in Brazil, that it "has no offices in Brazil," that it "has no branch office, agency, or field office in Brazil," and that it has no "employees, agents, or representatives in Brazil." Payne averred to the "Executive General Agent Contracts" that National Western entered into with individuals in Brazil that granted "the General Executive agent, as an independent contractor, the right to procure applications for insurance . . . from citizens of Brazil. These independent contractors submit such applications to [National Western] on behalf of their clients." He averred that, upon receipt of the applications from the "independent contractors in

---

[13] Although Naves requested findings of fact and conclusions of law, she did not file a notice of past due findings of fact and conclusions of law. *See* Tex. R. Civ. P. 297. Because the district court did not make findings of fact and conclusions of law, this Court implies all facts necessary in favor of the ruling, if they are supported by the record. *See BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002).

14

Brazil, including Tarantello, [National Western] evaluates the applications, and determines whether to issue a policy to the applicant."

Payne averred in paragraph 8 of his affidavit to the specific contract that National Western entered into with Tarantello:

> 8. Tarantello was the general agent for the insurance policy at issue in this case. Pursuant to his General Executive Agent Contract, Tarantello was not an agent or representative of [National Western], but was instead at all times acting as an independent contractor and for the benefit of his client. Tarantello is not a manager, representative, administrator, or officer of [National Western].

Payne also averred that National Western did not enter an appearance in the lawsuit brought by Naves, that no one represented National Western at the trial of the lawsuit brought by Naves in Brazil and, to his knowledge, National Western "has never sued or been sued in Brazil other than by Naves." Attached to Payne's affidavit is a copy of the "Executive General Agent Contract" between Tarentello and National Western and a letter dated April 23, 2004, from Payne to Tarentello's attorney.

In the Executive General Agent Contract, Tarantello and National Western agreed that Tarantello was an "independent contractor" and "nothing in this contract shall be construed to create the relationship of principal and agent or master and servant or employer and employee." They also agreed that Tarantello was not authorized to represent National Western in legal matters without National Western's consent and that Tarantello's authority was limited to that expressed in

15

the contract.[14] In the April 2004 letter, Payne states that Tarantello has no authority to accept service of process on National Western's behalf and that Tarantello's "sole authority is to submit applications to National Western for its review and determination."

Naves contends that Payne's statement that National Western "has no branch office, agency or field office" is conclusory and a conclusion of law by a non-expert to contend that National Western failed to establish that it does not have a branch office or agency opened, established, or incorporated in Brazil. *See Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984) ("Affidavits consisting only of conclusions are insufficient to raise an issue of fact."). Whether National Western has a branch office or agency in Brazil is a fact question and, in the absence of findings of fact and conclusions of law, this Court implies all facts, supported by the evidence, that are necessary to affirm the ruling. *See BMC Software Belgium*, 83 S.W.3d at 795; *Worford*, 801 S.W.2d at 109. Payne's sworn statements, including that National Western did not have a branch office or agency in Brazil, are based on his personal knowledge as a senior vice-president. His statements also are consistent with National Western's contractual relationship with individuals in Brazil who are authorized to procure insurance applications, such as Tarantello, and with the Brazilian court's finding that National Western "is not authorized to operate in Brazil." On this

---

[14] The Executive General Agent Contract provides:

Your right, power or authority on our behalf shall exist only as expressly stated in this contract. No right, power or authority shall be implied either from the grant or denial of powers specifically mentioned herein or the failure to mention any right or power herein. You agree that you and your agents are without authority to do or perform and expressly agree not to do or perform the following acts on our behalf: (a) incur any indebtedness or liability; (b) make, alter or discharge contracts, . . .

16

record, I would conclude that the evidence supports a finding that the Brazilian method of service of process on a foreign corporation with a branch office or agency in Brazil was not applicable.

Naves also contends that National Western failed to show that an alternative method for service on a foreign corporation in Brazil did not apply.[15] According to Gidi's affidavit and his translation of the Brazilian civil procedure rules, a foreign corporation may be represented by "persons designated in their bylaws, or in the absence of designation, by their directors." Naves contends that National Western failed to show that Tarantello was not a director or designated in National Western's bylaws to accept service. Whether or not Tarantello was a director or designated in National Western's bylaws to accept service also are fact questions. *See id.* Payne averred in paragraphs 9 and 10 of his affidavit that Tarantello was not authorized to accept service on behalf of National Western:

9.      Because Tarantello was not an agent, representative, or officer of [National Western], he was not authorized to accept legal service on [National Western's] behalf. Tarantello was not and has never been authorized to accept service of process on behalf of [National Western].

10.      [National Western] was not served with process in the lawsuit involving Ms. Mariana Naves in Brazil. No one authorized to accept service of process on behalf of [National Western] was ever served with process in the lawsuit involving Ms. Mariana Naves in Brazil.

---

[15] National Western contends that Naves did not preserve this argument—that National Western failed to disprove that the alternative method of service did not apply—because Naves did not raise it with the district court. *See* Tex. R. App. P. 33.1(a). The alternative method of service was addressed in Gidi's affidavit and at the hearing. I would conclude that the argument is before this Court for review.

Payne's statements are consistent with the contract between National Western and Tarantello. The parties agreed that Tarantello was an independent contractor and only authorized to represent National Western in legal proceedings with National Western's consent. I would conclude that Payne's affidavit supports findings that National Western's bylaws did not designate Tarantello to accept service and that he was not a director.

I would overrule Naves's second issue and, because it is dispositive, I do not address her other issues challenging National Western's other grounds for nonrecognition of the Brazilian judgment. *See* Tex. R. App. P. 47.1.

### *Requirement for Evidentiary Hearing*

In her fifth issue, Naves contends, in the alternative, that National Western should have been required to submit its evidence at an evidentiary hearing. Section 36.0044(e) of the Act allows a party moving for nonrecognition or responding to the motion to request an evidentiary hearing that the trial court "may allow in its discretion." *See* Tex. Civ. Prac. & Rem. Code Ann. § 36.0044(e). Because it was within the trial court's discretion to hold an evidentiary hearing, the issue is whether the trial court abused its discretion by not conducting an evidentiary hearing. *See* Tex. Gov't Code Ann. § 311.016(1); *Downer*, 701 S.W.2d at 241-42.

As an initial matter, National Western contends that Naves did not preserve her complaint that she was deprived of an evidentiary hearing. National Western set the hearing on the motion for nonrecognition and did not request an evidentiary hearing. Naves also did not request an evidentiary hearing prior to the hearing. Neither party subpoenaed or brought witnesses to the hearing. Counsel for National Western announced at the hearing that the matter was to be submitted

"on the papers." Naves did not seek a continuance of the hearing, and counsel for Naves told the district court that he did not want an evidentiary hearing and that it was not necessary: "I don't want an evidentiary hearing. I don't think we need one." On this record, I would conclude that Naves has failed to preserve her complaint that the district court erred in failing to hold an evidentiary hearing. *See* Tex. R. App. P. 33.1(a).[16]

Further, even if this issue were preserved for our review, I would conclude that Naves has failed to show that the district court abused its discretion when it did not hold an evidentiary hearing. *See Downer*, 701 S.W.2d at 241-42. Section 36.0044(g) of the Act authorizes a trial court to grant a motion for nonrecognition "if the motions, affidavits, briefs, and other evidence before it establish grounds for nonrecognition as specified in Section 36.005." *See* Tex. Civ. Prac. & Rem. Code Ann. § 36.0044(g). I would overrule Naves's fifth issue.

Because I agree with the majority's conclusion that the Brazilian court did not obtain personal jurisdiction over National Western, I concur in the majority's decision to affirm the judgment of the district court.

_____

Jan P. Patterson, Justice

Before Justices Patterson, Pemberton and Waldrop

Filed:   September 10, 2009

---

[16] Naves also contends as part of her fifth issue that the district court should not have considered the affidavits of Payne and Gidi because they are hearsay. But subsection (g) of section 36.0044 of the Act expressly allows a district court to refuse to recognize a foreign judgment based on affidavits. *See* Tex. Civ. Prac. & Rem. Code Ann. § 36.0044(g); *see also* § 36.0044(b), (c) (parties filing motion or response required to include "all supporting affidavits, briefs, and other documentation" with motion or response).